[Crim. No. 16312. Fourth Dist., Div. Two. Feb. 20, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED DALE STEGMAN, Defendant and Appellant.

938

**COUNSEL**

Cesena, Lee & Spencer and Gregory A. Lee for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Frederick R. Millar and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUFMAN, Acting P. J.—Defendant was charged by information with one count of possession of cocaine for sale, a violation of Health and Safety Code section 11351. Defendant pled not guilty. Defendant's motion to suppress evidence pursuant to Penal Code section 1538.5 was denied. Defendant then withdrew his plea and entered a plea of guilty to the count charged. Defendant was sentenced to the middle term of three years. Defendant appeals, contending the trial court improperly denied his motion to suppress.

*Facts*

On May 21, 1982, at approximately 1 a.m., Riverside County Sheriff's officers responded to a report from Jim Jacobson that he smelled the odor of ether coming from a neighbor's residence. When Deputies Hanson and Birney arrived at Jacobson's residence in a sparsely populated, mountainous, rural area, they smelled a very strong odor of ether. The deputies knew ether was a volatile substance, and that there was a danger of explosion and fire. Because of this danger, the Jacobsons were evacuated by the fire department.

There were three houses in the area of the ether odor. The first house was the Jacobson residence. Deputies Hanson and Birney went up to the second residence to try to determine where the ether odor was coming from. The second house appeared to be vacant, an unoccupied weekend cabin. From the porch or deck of the second house, the officers saw lights at the third house. The deputies returned to their unit and called for a backup deputy. Deputy Jordan arrived in approximately 30 minutes. Deputy Jordan also noticed a strong odor of ether in the area.

The three deputies then made an approach to the third house. They climbed over a chain link fence and walked up to the corner of the house. The smell of ether became stronger, the closer they approached to the house. As the deputies walked toward the side of the house, they could see lights on in the bottom rear portion of the house. Deputy Jordan testified as they came toward the rear portion of the house where the lights were, he could see people inside the residence, and he saw plastic vats with a chemical substance in them on the patio in back of the house. The deputies climbed up on a porch and saw through the windows and the open french doors what appeared to be a vacuum pump. Deputy Jordan could hear the motor running, and he saw more plastic vats with chemicals inside. He saw a number of glass beakers inside the house also. Deputy Hanson knocked on the door, which was slightly ajar, and announced " 'Sheriff's deputy, open the door.' " The subjects inside the residence immediately began run-

ning. The deputies then immediately went inside to pursue the running subjects. Defendant and two other persons were arrested.

The officers walked through the house, but they did not collect any evidence at that time. They opened the windows to let some fresh air into the house, they turned off one of the burners on the kitchen stove that had been turned on, and they attempted to turn off a wall heater, but they were unable to extinguish the pilot light. The officers were inside the house for about 45 minutes to an hour. Fire department personnel then entered the house to secure it from the risk of fire or explosion. The fire department personnel, however, were also unable to turn off the heater pilot light.

The three sheriff's deputies and the fire department personnel then awaited the arrival of the crime specific unit. Deputy Ridgway arrived at approximately 7 a.m. He smelled a heavy odor of ether in the area, and he saw a number of plastic barrels outside the residence on the driveway. He waited approximately half an hour for the arrival of two criminalists from the Department of Justice, and the three entered the house in order to turn off the furnace which the sheriff's deputies and the fire department personnel had been unable to turn off, and to determine whether any ongoing chemical reactions had stopped. Deputy Ridgway and the criminalists were in the house for less than five minutes. They did not take anything from the residence at that time. Deputy Ridgway then made out an affidavit and application for a search warrant. A search warrant was obtained, and served, and a large number of containers and various chemicals were seized.

*Contentions*

Defendant raises numerous contentions on appeal relating to his motion to suppress evidence. Specifically, defendant contends: (1) Jacobson's report to the police of the smell of ether from a neighbor's house was insufficient as an informant's statement to establish probable cause for the warrant or for the emergency search; (2) the "plain smell" of ether was not an exigent circumstance so as to justify the search; (3) a lawful odor is not probable cause for the issuance of a search warrant; (4) there was no emergency situation which justified the initial warrantless safety search; (5) the officers' actions in looking through the windows violated defendant's privacy rights; (6) the failure to comply with the knock notice rules of Penal Code section 844 rendered the evidence inadmissible; (7) the affidavit, the search warrant, and the search pursuant to the warrant were fruits of the initial illegal emergency search; (8) there was no exigent circumstance justifying reentry of the premises; (9) the officers' conduct was inconsistent with any exigency; and (10) the officers failed to comply with Penal Code section 1531 in executing the search warrant. The People argue that the

officers' conduct was reasonable under the circumstances of this case, and that the warrant was properly issued.

*Discussion*

■ Defendant first contends Jacobson's report of the smell of ether coming from a neighbor's residence was a mere unsubstantiated hearsay statement of an untested informant, and thus could not supply probable cause for a search or for issuance of a search warrant. Jacobson was a resident in the neighborhood and voluntarily initiated the contact with the sheriff's department. He was not criminally disposed or implicated, and was not acting for pecuniary or other personal gain. Jacobson was a private citizen informant, and as such, may be considered presumptively reliable. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333].) Moreover, the information he provided was corroborated by the officers who responded to his call, who also smelled the odor of ether. Jacobson's tip, furthermore, was not the basis for a search or for issuance of a search warrant. Jacobson reported a circumstance which required further investigation. The results of that investigation led to the subsequent search and the application for a search warrant, not the tip alone.

■ Defendant next asserts that "plain smell" is not an exigent circumstance justifying a search, and that lawful odors are not probable cause for issuance of a search warrant. The "plain smell" of ether, defendant argues, is not an exigent circumstance so as to justify a search. The "plain smell" of ether was not the justification for any search in the instant case. It was, however, a circumstance which justified further investigation. The officers knew that ether is a highly volatile and explosive substance. An odor detectible at a distance of two houses away in a wooded and mountainous area could be of a toxic volume near the source (see *People* v. *Dickson* (1983) 144 Cal.App.3d 1046, 1051 [192 Cal.Rptr. 897]), and although ether is a substance which may have lawful uses, the odor at such a high concentration as to be detected from some distance away is at least as probably consistent with criminal as with innocent activity.

■ The California Supreme Court has rejected the implication that activity which may be consistent with lawful conduct is not subject to governmental intrusion. Conduct which is consistent with either innocent or criminal behavior may justify an investigative detention. (*In re Tony C.* (1978) 21 Cal.3d 888, 892-894 [148 Cal.Rptr. 366, 582 P.2d 957].) "[I]f the circumstances are 'consistent with criminal activity,' they permit—even demand—an investigation: the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.' [Citation.] No reason appears for a contrary result simply because the

circumstances are also 'consistent with lawful activity,' as may often be the case." (*Id.*, at p. 894.) If conduct which is consistent with either criminal or innocent activity may justify a physical detention of a person (*In re Tony C., supra*), then such circumstances may certainly justify the sheriff's deputies here in approaching the residence in question "to resolve that very ambiguity and establish whether the activity is in fact legal or illegal . . . ." (*In re Tony C., supra*, 21 Cal.3d 888, 894.) ■ The strong odor of ether emanating from the subject residence was at least as consistent with criminal as with lawful activity, and when coupled with the officers' knowledge of the volatile and toxic properties of ether clearly justified their approach to the house.

We need not address defendant's specific contentions that the smell of ether alone does not justify a warrantless search, and that the odor of a noncontraband substance does not supply probable cause for issuance of a search warrant. Neither a search nor a search warrant in the instant case was based solely on the evidence of the ether odor. There was other evidence which, when combined with the smell of ether, established both the exigency for the entry and probable cause for the issuance of the search warrant. As the officers approached the residence, the smell of ether became stronger. The officers saw plastic vats with chemicals outside the house, and when they went up on the porch, they saw, plainly visible through the windows, a vacuum pump, more vats with chemicals, and glass beakers. When the sheriff's deputy knocked on the open door and identified himself, the people inside the house immediately ran. These additional items of evidence justified the entry into the residence, and not the smell of ether alone.

■ Defendant next contends there was no emergency situation or exigent circumstance which justified the initial warrantless "safety search." The officers' entry into the house to arrest the running suspects and to avert an explosion of the chemicals under these circumstances clearly falls under the exigency exception to the warrant requirement. Under the facts of this case there existed "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People v. Ramey, supra*, 16 Cal.3d at p. 276.) The officers knew the volatile and dangerous nature of ether, they had the Jacobson family evacuated from the area because of the imminent danger of explosion and fire, they noted the ether odor became stronger as they approached the subject residence, the presence of the chemical vats outside the house confirmed that the residence was the source of the ether odor, and the observations from the porch revealed a possible ongoing chemical process involving the ether. The actions of the sheriff's officers were consistent with the demands of the emergency: they quickly secured the fleeing suspects, opened the windows in an effort

to dissipate the chemical fumes, and located and attempted to extinguish heat sources (the wall heater and the stove) which could precipitate an explosion of the fumes. They did not collect any evidence at that time.

Defendant relies on *People* v. *Dickson, supra,* 144 Cal.App.3d 1046 for the proposition that the odor of ether does not indicate a condition of imminent danger so as to constitute an exigent circumstance permitting warrantless entry of a dwelling. To the extent the *Dickson* court suggested the risk of explosion or fire from ether in a sufficient concentration to operate a narcotics laboratory is minimal, we disagree with it.[1] It was objectively reasonable under the circumstances of this case for the officers to be concerned about the possible dangers of ether sufficient to permit them to approach the residence for further investigation. The more the officers saw, the clearer it became that large quantities of ether were being used in a clandestine narcotics laboratory. Through the windows the officers could see different types of chemicals, plastic vats with chemicals in them, glass beakers, and a vacuum pump with the motor running. In the face of these observations, it was perfectly reasonable for the officers to apprehend some danger from the ether and the ongoing chemical processes which they observed. As we have noted, the actions of the officers were entirely consistent with their knowledge of the dangerous properties of ether, that the ether fumes could explode if contacted with a heat source or flame. The officers opened the windows for ventilation, to dissipate the ether fumes. They extinguished any lit burners on the stove, and attempted to extinguish the furnace pilot light, although they were unsuccessful. The officers then withdrew from the premises.

The later reentry by Deputy Ridgway and the Department of Justice criminalists was based on a continuing exigency, because of the still-burning furnace. Deputy Ridgway entered with the criminalists to attempt to extin-

---

[1]The *Dickson* court stated: "Imminence [of danger] connotes a high probability that something will happen and that the event will occur in the very near future. The odds that a narcotics laboratory will explode or catch fire during any given hour—or during a given day or week—are very slim. Otherwise no one would accept the risk of conducting such an operation. [¶] If ether were so combustible that its mere presence signalled an imminent explosion, society would not have to worry about PCP and related drugs since all the laboratories would long ago have gone up in smoke or been abandoned." (*Id.,* at p. 1067.) There was no empirical evidence presented in the trial court in the *Dickson* case to substantiate this theory, and we doubt that judicial notice may be taken of such "facts." We note that the illicit reward in terms of the street value of illegally manufactured drugs might well be worth the risk of conducting such an operation. Moreover, even assuming the odds that a narcotics laboratory will explode or catch fire at any *given* time may be slim, the unpredictability and volatility of the substance enhance rather than diminish the presence of danger. Finally, the risk of explosion or fire is not the only danger to be apprehended. When the odor of ether is in a sufficient concentration to be detected at some distance, as was the case here, there is also a danger, as was noted in the *Dickson* case (*id.,* at p. 1051), of causing anesthesia or narcosis to any person near the source.

guish the flames, and to determine whether the dangerous chemical reactions had ceased. The reentry was for a time period of no more than five minutes for these purposes. The instant case is distinguishable from *People* v. *Blackwell* (1983) 147 Cal.App.3d 646 [195 Cal.Rptr. 298], in which the emergency situation was treated during the initial entry of the premises. At the time of reentry there was no longer a danger that the chemicals would explode. In the instant case, the circumstances constituting the danger still remained.

Defendant argues the officers had no right to be on the porch and make the observations they made through the windows and open french doors of the residence, citing *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33]. As the *Lorenzana* court recognized, however, exigent circumstances may justify an officer's presence in a place to which there is otherwise no express or implied public invitation. (*Lorenzana* v. *Superior Court, supra,* 9 Cal.3d 626, 634, and fn. 7, citing *People* v. *Sirhan* (1972) 7 Cal.3d 710 [102 Cal.Rptr. 385, 497 P.2d 1121].) The pervasive odor of ether, coupled with the officers' knowledge of its volatile and dangerous properties, justified their approach to the house for investigation of an emergency situation. Otherwise, their observations were of evidence in plain sight from areas (the driveway and the porch) which were the logical and proper access to the residence.

Defendant argues the affidavits supporting the search warrant, the search warrant, and the evidence seized pursuant to the search warrant were all the fruit of the initial, assertedly illegal, search. As we have shown, the initial entry to the residence and the reentry by Deputy Ridgway and the criminalists were justified by a continuing exigency. These entries were not unlawful. Thus, the affidavit was properly made, and the warrant was properly issued and executed.

Defendant next contends the officers' conduct in waiting for backup before approaching the house was inconsistent with a threat of imminent danger and the subjective motivation of preserving lives and property. We reject the intimation in *People* v. *Dickson, supra,* 144 Cal.App.3d 1046, that, as a matter of law an officer may not be found to have a subjective, good faith belief there is an emergency if the officer waited for backup assistance before moving to take action. The pervasive odor of ether at the distance indicated in the instant case strongly suggested the ongoing manufacture of illicit drugs. Persons in the process of manufacturing illicit drugs may reasonably be expected to be armed and willing to use arms to prevent apprehension. An officer is not required to rush blindly into a potential illicit drug laboratory and possibly encounter armed individuals guarding the enterprise, with no regard for his own safety just to show his good faith belief

the situation is emergent. Ether at such high levels of concentration would be highly dangerous regardless of purpose, thus constituting an exigent circumstance, and an officer is not required to put aside the common sense inference of probable narcotics activity and foolishly imperil his own life. As we have stated, the officers here took reasonable precautions consistent with the emergency situation. They evacuated the only other residents of the area, they had fire department personnel on hand, and took whatever precautions were necessary inside the residence to dissipate the fumes, extinguish sources of heat, and otherwise minimize the risk of fire or explosion.

■ Defendant urges that the officers did not comply with the knock-notice requirements of Penal Code section 844. Defendant asserts that the officers were required to (1) demand entrance; (2) explain the purpose for which they desired admittance; and (3) give the people time to let the officers in. (See *People* v. *Bennetto* (1974) 10 Cal.3d 695 [111 Cal.Rptr. 699, 517 P.2d 1163].) Defendant argues that the officers here simply knocked on the door and forced their way in. Not so. As the evidence plainly showed, Deputy Hanson knocked on the open door and identified himself as a sheriff's deputy. The people inside the house immediately began running away. The law does not require strict compliance with the knock-notice rule where it is reasonable to conclude that the arrest would be frustrated by the delay caused in observing knock-notice requirements. (*People* v. *Maddox* (1956) 46 Cal.2d 301, 305-306 [294 P.2d 6]; see *People* v. *Negrete* (1978) 82 Cal.App.3d 328, 335-339 [147 Cal.Rptr. 101].) It was apparent that the occupants of the residence in the instant case were engaged in the commission of a crime and were attempting to escape. The officers were not required to wait for defendant or his friends to open the door. For the same reason there was no violation of Penal Code section 1531. (*People* v. *Villanueva* (1963) 220 Cal.App.2d 443, 447-449 [33 Cal.Rptr. 811].)

### Disposition

Defendant has failed to establish any ground upon which the motion to suppress was erroneously denied. The judgment is affirmed.

McDaniel, J., and Rickles, J., concurred.