[No. A022606. First Dist., Div. Three. May 16, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
KIM SUE BAIRD et al., Defendants and Appellants.

**COUNSEL**

Judd C. Iversen and Gary G. Campbell, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Robert R. Granucci and Bruce M. Slavin, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—Appellant Kim Baird appeals from the judgment entered upon her guilty plea to possession of methamphetamine (Health & Saf. Code,

§ 11377); appellant Wayne Baird appeals from the judgment entered upon his guilty plea to manufacture and possession for sale of methamphetamine (Health & Saf. Code, §§ 11379, 11378). Appellants contend the trial court erred in denying their motion to suppress evidence; appellant Wayne Baird also contends the court erred in failing to inform him prior to his plea that he would be subject to a parole term.

I

At approximately noon on November 8, 1982, while driving his patrol car, California Highway Patrol Officer O'Brien smelled a strong, overpowering smell of ether which he decided was coming from 6601 Lucas Valley Road. Sergeant Hunt of the Marin County Sheriff's Department responded to O'Brien's call for assistance. They then contacted Sergeant Russo, because they suspected that the source of the odor was a clandestine drug lab. Russo drove by the address, and also smelled ether.

To verify the suspicions about the possibility of a clandestine lab, Russo contacted an agent from the State Bureau of Narcotic Enforcement; he also contacted the Marin County Major Crime Task Force. Sometime after 1 p.m., Russo contacted the district attorney's office, and was told he did not have enough information to obtain a search warrant or to enter the premises; he was told that the situation was probably an emergency which only the fire department could check.

Russo called the fire department and advised the dispatcher of the situation. He did not ask to have someone from the department go to the residence directly; instead, he asked the dispatcher to have Fire Marshal Shields contact him. While awaiting contact from Shields, Russo did nothing to evacuate the area, or to block the road near the house.

At approximately 4:15 p.m., the dispatcher called Shields by radio and told him to contact Russo regarding hazardous chemicals in a house. At the time Shields was in Nicasio. Instead of calling Russo, Shields drove down Lucas Valley Road to the Civic Center, where he met Russo. Russo told Shields that he wanted the fire department to investigate a smell of ether emanating from 6601 Lucas Valley Road, as it was a hazardous situation. He also told Shields that they suspected operation of a clandestine drug lab at that address, and wanted to enter the premises with Shields to investigate. Russo immediately assembled a task force of police officers and narcotics agents, some of whom were already present.

Shields contacted a member of the Department of Environmental Health, and ordered a fire truck. Shields, Russo, Hunt, and O'Brien and several

other officers went to the scene, arriving at about 5:15 p.m. Among the officers in the group was one whose assignment was to go to the rear of the house and prevent anyone from leaving. In addition, the group included an "identification technician," whose task is to collect, preserve, and present evidence in court.

Agent Largent of the State Bureau of Narcotic Enforcement met Russo and the others at the location; at his recommendation, traffic was blocked on either side. The group had to cut a chain on a gate, and then cross a 30- to 40-foot bridge over a creek to get to appellants' yard. As Fire Marshal Shields got out of the car after crossing the bridge, when he was about 15 to 20 feet from the house, he smelled ether for the first time. He also saw a small amount of smoke coming from the chimney, and a man standing near a vehicle. Shields identified himself, and explained that he was there to investigate the smell; the man didn't respond. Shields then asked who was in the house; the man said that his wife was. The ether odor outside was strong, and Shields entered the house to detect its source because ether vapors can be highly flammable and explosive. He had a device which measures flammable vapors in the air. A woman was in the living room, who said she didn't know the source of the smell. Shields followed the smell to another room, where the smell was stronger but the meter indicated that the vapors were below explosive limits. In that room were canisters and other equipment. He then had the fire in the fireplace put out with a portable extinguisher. Later, officers obtained a warrant and searched the rest of the premises.

II

At the hearing on appellants' suppression motion, the People urged that the warrantless entry and search were authorized by exigent circumstances. The trial court agreed, and denied the motion. The court focused on the conduct of the fire marshal, and stated that he "acted reasonably and that he had reasonable probable cause to do what he did."[1]

 Warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few specifically established exceptions. (*Mincey v. Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408].) A warrantless entry by law enforcement officials may be lawful when there is compelling need for official action, and no time to secure a search warrant. Among those exceptions are entries and searches which occur under so-called "exigent circumstances." (*Michigan* v. *Tyler* (1978) 436 U.S. 499, 509 [56 L.Ed.2d 486, 498, 98 S.Ct. 1942; see *Warden* v.

---

[1]At the suppression hearing, the court considered the preliminary hearing transcript and the testimony of three additional witnesses.

*Hayden* (1967) 387 U.S. 294, 298-299 [18 L.Ed.2d 782, 787, 87 S.Ct. 1642].) ■ Similarly, although a warrant is ordinarily required for administrative searches to enforce local building, health, or fire codes, a warrantless entry by fire officials is constitutionally reasonable in emergency situations. (*Michigan* v. *Tyler, supra,* at pp. 506-509 [56 L.Ed.2d at pp. 496-498].)

In *People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721], the California Supreme Court upheld a warrantless entry and search after the trial court found that two officers reasonably believed that someone inside an apartment was in distress and in need of help, and that they entered for the purpose of giving aid. (*Id.,* at p. 377.) The court explained, "Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose. [Citations.]" (*Ibid.*) ■ In another context, exigent circumstances have been defined as an "emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People* v. *Ramey* (1976) 16 Cal.3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333].)

*People* v. *Patterson* (1979) 94 Cal.App.3d 456 [156 Cal.Rptr. 518] and *People* v. *Superior Court (Peebles)* (1970) 6 Cal.App.3d 379 [85 Cal.Rptr. 803] are illustrative. In *Peebles,* police conducted a warrantless search of a defendant's apartment after he was seen fleeing from the scene of a bomb explosion. The search was justified, the court held, by the possibility that another bomb or its components might be in that apartment. (*Id.,* at pp. 381-382.) In *Patterson,* narcotics officers had information from an untested informant that PCP was being sold at a particular address. Without a warrant, they went to that house, and obtained entry by consent. Once inside, one officer smelled a strong odor of ether, alcohol, and other chemicals, and concluded that PCP was being manufactured on the premises. He followed the odor to a room where he found the manufacturing equipment. The court upheld that warrantless search, on the ground that the information the officer had previously received and his awareness of the volatile nature of the chemicals made it reasonable for him to look for the source of the odor, to determine whether he and the occupants of the house were in danger. (*Patterson, supra,* 94 Cal.App.3d at p. 465.)

■ ■ ■ ■ More recently, in *People* v. *Dickson* (1983) 144 Cal.App.3d 1046 [192 Cal.Rptr. 897] the court analyzed the exigent circumstances doctrine in considerable detail, including that aspect of the doc-

trine at issue in this case, i.e., which permits a warrantless entry and search to protect persons or property against some imminent peril.[2] In *Dickson,* a police officer noticed a strong odor of ether coming from a house. Believing that the source of the odor was a laboratory, he summoned the fire department, police chemists, and backup units. While awaiting their arrival, he tried unsuccessfully to open a wrought iron gate five feet in front of the open door of the house. Through the open door he heard the sound of a radio or television, and saw bottles, jars, and equipment. He evacuated some houses on one side of the residence, but not those on the other side, or across the street. (*Id.,* at p. 1069.) He and his partner waited out of sight for 30 to 45 minutes for the backup units. When they arrived, the officers approached the door with guns drawn, and defendant opened the gate. Inside, the odor was stronger, and they found equipment similar to that used in illicit narcotics labs. (*Id.,* at pp. 1050-1051.)

The *Dickson* court concluded that the warrantless entry was not justified by any variation of the exigent circumstances doctrine, and reversed the trial court's denial of the motion to suppress. ██ According to the *Dickson* court, when the People seek to justify a warrantless entry on the ground of an imminent threat to life and property, "the court is entitled to ask at least two questions. First, the objective test: was the threat so imminent and serious a reasonable policeman would believe that a warrantless, emergency entry was necessary to save lives and property? And, second, the subjective test: was this officer indeed motivated primarily by a desire to save lives and property?" (*Id.,* at p. 1063.)

The entry in *Dickson* failed both prongs of that test. Applying the objective test first, the court held that the odor of ether emanating from a house cannot in and of itself establish the requisite degree of urgency to justify a warrantless entry. Therefore a reasonable officer would not believe that an explosion was imminent merely because he smelled the odor of that substance. (*Id.,* at pp. 1065-1068.)

---

[2]The *Dickson* court pointed out that "exigent circumstances" have excused compliance with three distinct search and seizure requirements related to dwellings. First, when officers have a valid search or arrest warrant, "exigent circumstances" may allow them to dispense with ordinary knock and notice requirements. Second, when officers have valid probable cause to believe a particular suspect has committed an offense, "exigent circumstances" may permit a warrantless entry and arrest. Third, when officers lack probable cause to believe a particular suspect has committed an offense or a dwelling houses criminal activity or evidence, "exigent circumstances" can act as a substitute for probable cause and justify a warrantless entry. (*People* v. *Dickson, supra,* 144 Cal.App.3d at pp. 1052-1053.) The latter exception to the warrant requirement, the court explained, is "grounded on the sensible premise that the officers are not entering for purposes of searching or seizing or arresting. Rather they are entering for an independent motive—to protect persons or property against some imminent peril. [Citations.]" (*Id.,* at p. 1062.)

Next, the court applied its subjective test. After analyzing the conduct of the officer, the court concluded that he was not motivated *primarily* by a desire to save lives or property. Instead, his behavior was more consistent with the steps one would take in executing a search for a PCP lab, and was inconsistent with a belief that an explosion was imminent. (*Id.,* at pp. 1068-1071.)

■ ■ ■ ■ We do not agree with appellants that *Dickson* compels reversal in this case. First, we disagree with the *Dickson* court's broad pronouncement that the odor of ether alone can never constitute an exigent circumstance justifying a warrantless entry.[3] ■ In addition, while we agree that both subjective and objective criteria must be examined in any motion to suppress, we disagree with the *Dickson* court's formulation and application of the subjective test. In particular, we object to that court's requirement that the officer's *primary* motivation must be determined, and question its apparent holding that it is the appellate court which must determine what the officer believed.

■ Despite our disagreement with *Dickson,* we have concluded that the trial court erred when it denied appellants' suppression motion. As we have stated, the trial court focused on the fire marshal's conduct, and concluded that he acted reasonably. However, the evidence does not support a finding

---

[3]In a very recent case, *People* v. *Stegman* (1985) 164 Cal.App.3d 936 [210 Cal.Rptr. 855], the Fourth District criticized *Dickson* and held that a warrantless entry was justified by exigent circumstances under the following facts. Jacobson, a resident of a sparsely populated area, reported to the sheriff that he smelled ether coming from a neighbor's residence. The deputies who responded smelled the ether, which they knew was volatile and dangerous. The Jacobsons were evacuated. The deputies went to the second of the three houses in the area; it was vacant. They saw lights in the third house, and called for a backup, who arrived in 30 minutes. They then climbed a fence and approached the third house, and the smell became stronger. They saw plastic vats of chemicals on the patio. Through the window, they saw people, more plastic vats, and glass beakers; they heard and saw what appeared to be a vacuum pump in operation. They announced themselves, and the occupants of the house began running. The deputies entered, opened the windows, turned off a burner, and tried unsuccessfully to turn off a pilot light. Eventually fire department officials arrived. (*Id.,* at pp. 940-941.)

The *Stegman* court held that the smell of ether justified further investigation, and that the officers' other observations, coupled with the smell, established the requisite exigency justifying the warrantless entry. (*Id.,* at pp. 942-943.) The *Stegman* court disagreed with *Dickson* to the extent that court suggested that the risk of explosion or fire from ether in sufficient concentration to operate a narcotics lab is minimal. (*Id.,* at p. 944.) In addition, the *Stegman* court rejected the "intimation" in *Dickson* that as a matter of law an officer may not be found to have a subjective, good faith belief that there is an emergency if he waits for backup assistance before entering. The *Stegman* court stated that the pervasive odor of ether at a distance strongly suggests the ongoing manufacture of illicit drugs, that persons who manufacture illicit drugs may reasonably be expected to be armed, and that an officer is not required to rush blindly into a potential illicit drug lab and possibly encounter armed individuals guarding the enterprise just to show his good faith belief the situation is an emergency. (*Id.,* at pp. 945-946.) In our view *Stegman* is a better reasoned opinion than *Dickson.*

that either the fire marshal or anyone else believed that the situation posed an imminent danger and required immediate action when they decided to enter the premises. The facts which we have already recited in considerable detail indicate that during the five hours between O'Brien's initial awareness of the odor and the entry, no one involved in this incident treated it as an emergency requiring urgent action. For example, when Russo first stopped at 6601 Lucas Valley Road to confirm O'Brien's report about the ether odor, he saw a car driving across the bridge into the property, but made no effort to warn its occupants. After being informed by the district attorney's office of the possibility of an emergency, Russo did nothing to warn the occupants of the house, its neighbors, or passersby. When the fire marshal was called, he was told not to go directly to the house, but to contact Russo. Instead of telephoning Russo, the fire marshal drove to the Civic Center to meet him. Among the task force of police officers and narcotics agents who went with the fire marshal to the house was one officer whose task was to *prevent* people from fleeing from the house. The People's argument that the smoke coming from the chimney transformed the situation into one requiring immediate action simply ignores the undisputed evidence that the fire marshal did not see any smoke until after the officers cut the chain at the gate and drove across the bridge and into the yard.

When speed is essential, the exigencies of the situation may justify a warrantless entry and search, but this was not such a case. Our review of this record has persuaded us that the evidence does not support a determination that any of the officials involved believed that they were confronted with an "emergency situation requiring swift action to prevent imminent danger to life or serious damage to property." (See *People* v. *Ramey, supra,* 16 Cal.3d at p. 276.) Respondent's suggestion that the inevitable discovery rule is applicable here is without merit. The trial court erred in denying appellants' motion to suppress.

In light of our conclusion, we need not consider appellant Wayne Baird's contention that he was inadequately advised prior to his plea.

The judgment is reversed.

White, P. J., and Barry-Deal, J., concurred.

On June 14, 1985, the opinion was modified to read as printed above.