[No. F010941. Fifth Dist. Dec. 1, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE VERNON CAIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Donald I. Segerstrom, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart and Steve White, Chief Assistant Attorneys General, Joel Carey and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, Acting P. J.—

### STATEMENT OF THE CASE AND FACTS

At approximately 4 a.m. on February 29, 1988, Florence W. was asleep in her chair when she heard a crash. Someone had broken her sliding glass door to gain entry to her apartment. The assailant started to strangle her with his hands. He punched her in the face, pulled her off the chair, ripped off her clothes, and attempted to rape her. When he was unsuccessful, he got up and left. Florence called law enforcement officials.

Officer Miller responded to the report of an attempted rape. He contacted Florence, who was badly beaten. She was unable to describe her assailant except for the clothes he was wearing. Medical personnel arrived and took her to the hospital. Officer Miller could hear music through the common wall of Florence's apartment and apartment D next door. He and Sergeant Rainwater decided to go next door to check for possible witnesses. The music was playing, the television was on, and lights were on in the apartment. Officer Miller knocked on the door with his fists and identified himself as a sheriff. No one answered the door, so Officer Miller knocked on the

door with his baton. Again no one answered. In his work as a sheriff Miller had knocked on a lot of doors. He thought it was unusual that no one came to the door. Sergeant Rainwater mentioned that perhaps there was another victim inside. Miller agreed that this was possible. Sergeant Rainwater told Miller to check the doorknob. It was unlocked and subsequently opened about one inch.

Miller pushed the door open and announced his presence. He saw a pair of legs sticking out between the bed and the sliding glass door. They entered the apartment and found Dale Vernon Cain, the defendant, lying asleep on the floor. He was intoxicated. He was wearing clothing which matched Florence's description of her assailant and had bloodstains on his clothing. Defendant was arrested and taken into custody.

On March 2, 1988, the investigating officer, Sue Banks, was informed that the bloodstains on defendant's clothing matched the victim's blood. A sample from defendant was requested but defendant refused to submit to a blood test. Officer Banks rearrested defendant on March 2. He had not previously been arraigned. On March 3 a search warrant was obtained for a sample of defendant's blood. The sample was taken that day. Officer Banks testified he would have served the search warrant even if defendant had not been in jail.

Defendant was charged with assault with intent to commit rape (Pen. Code, § 220),[1] burglary (§ 459), and malicious mischief (§ 594, subd. (a)). In addition, the felony counts alleged a great bodily injury enhancement (§ 12022.7) and an allegation that the victim was over 60 years of age (§ 1203.09).

Defendant filed a section 1538.5 motion to suppress evidence, asserting that the entry into his apartment was an illegal warrantless entry not justified by exigent circumstances. He also contended that his blood sample was illegally obtained because he had not been arraigned within the time limits set forth in section 825. The court denied the motions.

Thereafter, defendant pleaded nolo contendere to attempted rape on the condition that all other charges and enhancements be dismissed and he be sentenced to no more than four years in prison. The court accepted the plea and sentenced defendant to prison for four years.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

## DISCUSSION

### I. Was the Warrantless Search of Defendant's Apartment Justified by Exigent Circumstances?

 Defendant contends that the warrantless entry into his apartment was not justified by exigent circumstances. He argues that this court should apply the two-part test set forth in *People* v. *Dickson* (1983) 144 Cal.App.3d 1046 [192 Cal.Rptr. 897], applying first the objective test of whether a reasonable officer would have found exigent circumstances and next, the subjective test of whether the officer was indeed motivated primarily by a desire to save lives and property. Defendant attempts to distinguish the case here from other exigent circumstance cases because the officer entered a residence other than where the emergency took place. He argues allowing the police to search neighboring residences will cause the exception to swallow the rule. Defendant further asserts there was no evidence whatsoever that an emergency was occurring in his apartment. Next, defendant argues that under the subjective test there was no evidence to support the trial court's finding that the officers reasonably believed there was an emergency. The emergency was not apparent when they arrived at apartment D, and they did not check for forced entry. At the most, Officer Miller's testimony established that there " 'might' be a 'problem.' " Defendant argues that Miller manufactured an emergency based solely on conjecture and speculation. He contends the officers' conduct is consistent only with the desire to investigate.

 Searches made without a warrant are unreasonable unless subject to certain exceptions. (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408].)

"The general principles surrounding warrantless entry were summarized by the United States Supreme Court as follows: 'We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area *to see if there are other victims* or if a killer is still on the premises.' [Citation.] Although *Mincey* involved the search of a homicide scene, comparable principles would govern a search of the scene of a robbery involving a wounded victim.

"The California courts are in full accord with the foregoing emergency exception to the warrant requirement. [Citations.]

"As an appellate court recently stated, 'There is no ready litmus test for determining whether a particular situation negates the constitutional requirement of a warrant. [Citation.] In each case the claim of exigent circumstances must be evaluated on its particular facts. Where there is reasonable cause to believe additional suspects or potential victims are in a residence, a warrantless entry is permissible. [Citations.]'" (*Tamborino* v. *Superior Court* (1986) 41 Cal.3d 919, 924 [226 Cal.Rptr. 868, 719 P.2d 242].)

■ The Fourth Amendment embraces the seizure of persons as well as property. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 271 [127 Cal.Rptr. 629, 545 P.2d 1333].)

■ In *People* v. *Dickson, supra,* 144 Cal.App.3d 1046, the appellate court established two questions which this court must ask when determining if a warrantless search was justified by exigent circumstances. "First, the objective test: was the threat so imminent and serious a reasonable policeman would believe that a warrantless, emergency entry was necessary to save lives and property? And, second, the subjective test: was this officer indeed motivated primarily by a desire to save lives and property?" (*Id.* at p. 1063.)

The appellate court in *People* v. *Baird* (1985) 168 Cal.App.3d 237, 244 [214 Cal.Rptr. 88], disagreed with the *Dickson* test. "[W]hile we agree that both subjective and objective criteria must be examined in any motion to suppress, we disagree with the *Dickson* court's formulation and application of the subjective test. In particular, we object to that court's requirement that the officer's *primary* motivation must be determined, and question its apparent holding that it is the appellate court which must determine what the officer believed."

Subsequently, the California Supreme Court in *People* v. *Duncan* (1986) 42 Cal.3d 91, 104 [227 Cal.Rptr. 654, 720 P.2d 2], analyzed an exigent circumstance case. It set forth the test in *Dickson* and then set forth the above quote from *Baird*. It then stated, "We agree with *Baird*." Therefore, the objective/subjective test defendant asks this court to apply from *Dickson* is not applicable. This court must first determine if there was substantial evidence to support the trial court's finding that the officers were motivated by a desire to save lives and/or property. (*People* v. *Bradford* (1972) 28 Cal.App.3d 695, 700 [104 Cal.Rptr. 852].) All presumptions on appeal favor the trial court's power to resolve conflicts in the testimony. (*People* v. *Hill* (1974) 12 Cal.3d 731, 744 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].)

██ The trial court found that Florence W. had been brutally beaten. The officers knocked at the adjacent apartment for three or four minutes, the TV was on, the lights were on, and the stereo was playing. At this point in time it was probably 4:15 to 4:30 a.m. They tried the door, and it was unlocked. The trial court stated, "That certainly would lead one to believe that something is amiss."

"There I think is reasonable belief on the part of the officers that there could be problems there in the apartment. If we have a victim who is in that apartment bleeding to death, every minute is crucial. Probably more accurately every second is crucial. It would be unreasonable for them to take the time it seems to me to start an investigation of who lives in that apartment and what gender that person is."

Officer Miller testified to the above facts and stated both he and Sergeant Rainwater thought they might have another victim. He thought the situation was unusual. In our view, considering the time, place and circumstances confronting the officers, there was substantial evidence to support the trial court's finding that the officer was motivated by a desire to save lives.

The second and more difficult question we must address is whether "the threat [was] so imminent and serious a reasonable policeman would believe that a warrantless, emergency entry was necessary to save lives and property." (*People* v. *Dickson, supra,* 144 Cal.App.3d 1046, 1063.)

██ It is clearly established that " '[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " (*Mincey* v. *Arizona, supra,* 437 U.S. 385, 392 [57 L.Ed.2d 290, 300].) The search "must be 'strictly circumscribed by the exigencies which justify its initiation.' " (*Id.* at p. 393 [57 L.Ed.2d at p. 300].)

In *Tamborino* v. *Superior Court, supra,* 41 Cal.3d 919, a robbery was reported at a certain address. A victim was believed to be injured and bleeding. Officers drove to the location and found blood outside defendant's apartment. A neighbor confirmed that an injured person was inside the apartment. The officer knocked and identified himself. After hearing noise inside, he believed prompt action was necessary and kicked in the door. He saw defendant, who was bleeding from his face. He wasn't sure whether the defendant was the suspect or a victim. He brought him outside and handcuffed him. After determining defendant's wounds were not serious, he reentered the apartment to determine if any other injured persons were inside. He discovered contraband in plain view. (*Id.* at p. 922.) The

defendant's suppression motion was denied. On appeal he claimed the officer did not have authority to reenter the apartment after he removed the defendant. (*Id.* at p. 923.) The California Supreme Court upheld this search.

" '[D]ue weight must be given not to his [the officer's] unparticularized suspicions or "hunches," but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary. [Citations.]' [Citation.]

". . . [T]he observation of Tamborino, wounded and bleeding, coupled with the earlier report of a robbery, constituted 'articulable facts' that reasonably could have led the officer to decide that an immediate, brief search of the apartment was warranted to determine whether additional persons were present at the crime scene. Officer Klein had no prior information indicating that only *one* victim was involved in the robbery, and in light of the situation he confronted, ordinary, routine common sense and a reasonable concern for human life justified him in conducting a walk-through search truly limited in scope to determining the presence of other victims. Nothing in the record suggests that the officer had any hidden additional motive, such as searching for drugs or contraband, in conducting the search . . . ." (41 Cal.3d at p. 923.)

In *People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721] the police went to an apartment building to question a suspect in a burglary. The apartment manager directed them to defendant's apartment and said he was sickly. The officers knocked on the door. They heard moans and groans and thought someone inside was in distress. The manager let them in. No one was inside. They found stolen property. (*Id.* at p. 376.) The denial of defendant's suppression motion was upheld on appeal. The court emphasized that the officers did not gain entrance as a pretext and reasonably believed someone was in distress. (*Id.* at pp. 377-378.)

In *People* v. *Keener* (1983) 148 Cal.App.3d 73 [195 Cal.Rptr. 733], the victim of a sexual assault directed the police to the house of her assailant. The assailant surrendered after three and one-half hours. After his surrender, the officers went and looked in the house for someone else, discovering incriminating evidence but not discovering any other persons. (*Id.* at p. 76.) The appellate court upheld the search, stating, "[w]here there is reasonable cause to believe additional suspects or potential victims are in a residence, a warrantless entry is permissible." (*Id.* at p. 77.)

A search of an apartment which had a fresh trail of blood leading to it was upheld in *People* v. *Amaya* (1979) 93 Cal.App.3d 424, 427 [155

Cal.Rptr. 783]. No warrant is required "when, having come upon the scene of a crime, officers reasonably suspect a victim or victims might be inside a dwelling and in need of immediate aid." (*Id.* at p. 428.)

The police in *People* v. *Bradford, supra,* 28 Cal.App.3d 695 were in pursuit of "an armed robber who had demonstrated a great proclivity for shooting people." (*Id.* at p. 703.) He took refuge in an apartment building with eight to twelve units. The police went to each unit, many residents consented to a search. In one unit no one answered the door. They entered and found incriminating evidence. The defendant rented this apartment. The search was upheld. In upholding the search, the appellate court stated, "In testing the reasonableness of the search we might ask ourselves how this situation would have appeared if the fleeing gunman armed with a shotgun had shot and possibly killed other officers or citizens while the officers were explaining the matter to a magistrate." (*Id.* at p. 704.)

A search of a residence was upheld in *People* v. *Hill, supra,* 12 Cal.3d 731 when officers, aware of a recent shooting, found one victim. They then found fresh bloodstains on the fence and porch of a residence. When they received no response to their knocks, they entered. Their entrance was "the only practical means of determining whether there was anyone inside in need of assistance." (*Id.* at p. 755.) A delay may have resulted in the unnecessary loss of life. (*Ibid.*)

In *People* v. *Ammons* (1980) 103 Cal.App.3d 20 [162 Cal.Rptr. 772] the appellate court held that a warrantless search was permissible because the police officer had a rational basis for believing an emergency existed. The officer was alerted by a concerned employer that one of his punctual employees was several hours late for work. Officer Ramos went to the house.

"Both cars were home; defendant was usually home on Monday morning; the dog was left unattended long enough to defecate on the floor. Usually a neighbor cared for the dog when the Ammons were away. Contrary to their custom, the Ammons had not told this neighbor that they would be away from home. The victim, normally a punctual employee, was several hours late for work and had not called; his employer expressed concern for his welfare. Defendant had a heart condition for which she was under a doctor's care and was taking medication. The Ammons neighbors had not seen them for two days. Their daughter was on vacation and could not be reached. Ramos' only motive for entering the Ammons residence was to render aid or assistance." (103 Cal.App.3d at pp. 30-31.)

In upholding the search, the court stated: "It is uncontroverted that Ramos entered without an accompanying intent to arrest or search and on

the basis of his 'strong feeling' that something was amiss. A police officer with many years of experience acquires a certain feel for people and situations. He should not be precluded from relying on this experience where, as here, there is a wholly benevolent motive, and a rational basis for believing that circumstances tantamount to an emergency are present." (*Id*. at p. 30.)

Defendant relies on *Horack* v. *Superior Court* (1970) 3 Cal.3d 720 [91 Cal.Rptr. 569, 478 P.2d 1] for the proposition that lights and loud music inside a residence when no one answers the door are not enough to permit a warrantless entry and search. In *Horack* the officer received a call that two "'hippie-type'" individuals had entered what the caller believed was a vacant house. The officer went to the house around 1 p.m. and knocked. He could see there were no furnishings in the house except a stereo which was playing loudly. No one responded to his knocks, and he heard no other sounds from within. The front door was locked. The back door was unlocked, and the officer entered to "'ascertain if there were people in the dwelling that did not have the authority to be inside.'" (*Id.* at p. 723.) The court found the search to be unreasonable.

"The only property to be protected was the bare carpeted house containing a stereo system, and the police officers saw nothing to indicate any immediate threat of damage or destruction. Indeed, Officer Thompson candidly admitted that he saw nothing to indicate that a burglary was in progress or had been committed. And even the most vivid imagination would be unable to contrive imminent danger to human life in the situation apparent to Officer Thompson and Sergeant Petersen prior to their entry." (3 Cal.3d at p. 726.)

*Horack* is clearly distinguishable from the case here. Hearing loud music, seeing lights on, and receiving no response to a knock on the door in the early afternoon is not sufficient to justify an emergency warrantless entry. To allow a search based on just those facts would seriously erode the security and privacy interests one holds in his home which are protected by the Constitution. ▉ In the instant case, there was a great deal more. A brutal attack had just taken place next door. It was in the early-morning hours. Also, the officers entered the apartment with a purely benevolent motive. There is no evidence to support defendant's argument they entered to merely search for evidence of criminal activity nor that they believed a suspect would be inside.

Defendant also asserts that his case is analogous to *People* v. *Smith* (1972) 7 Cal.3d 282 [101 Cal.Rptr. 893, 496 P.2d 1261]. In *Smith* an apartment house owner found the six-year-old daughter of one of her renters crying on the steps to her apartment. She had hurt her knee and was lonesome. The

owner took the girl in and consoled her. After one hour she contacted the police. The girl said her mother was not home. The officer went to the mother's apartment looking for her. After receiving no response to his knocks, the officer had the manager open the door. He entered and found drugs inside. (*Id*. at p. 284.)

The California Supreme Court found the entrance to be illegal.

"[R]ather than drawing the obvious conclusion that no one was at home [citation], Officer Brown proceeded to speculate that Mrs. Blinn [the mother] might nevertheless be inside but be unable to answer because she was somehow indisposed and, by that token, in need of 'help.' This . . . attempt to create an emergency where none existed is . . . implausible. . . . There was not a scintilla of evidence to support the assumption that Mrs. Blinn had not only returned unnoticed to her flat but had thereupon suddenly fainted, fallen sick, or otherwise become incapacitated to the point of rendering her unable to care for her daughter and in need of police assistance. Such a belief is no less irrational than that entertained by the officer in *Horack* who received no response when he knocked on the door of an apparently empty house, and 'because there was no response, he believed the persons were intentionally failing to open the door; because they were consciously refusing to open the door, he believed they had something to hide, namely, that they were occupying the house without authority.' [Citation.] In both cases the belief upon which the officer acted was the product not of facts known to or observed by him, but of his fanciful attempt to rationalize silence into a justification for his warrantless entry." (7 Cal.3d at p. 287.)

*Smith* is also distinguishable from the case here. In *Smith* there was absolutely no evidence to support a conclusion that anything was amiss in the apartment. All evidence pointed to the contrary. Here, as previously stated, there was evidence of a recent brutal attack next door and the officers entered apartment D for purely benevolent purposes.

As the above cases illustrate, this case falls in the gray area between permissible and impermissible warrantless emergency entries. On the one hand, the evidence here which the officers utilized to think a victim was inside was not as concrete as fresh pools of blood, moans and groans, or corroborating reports from others that something may be amiss inside the apartment. Conversely, it was in the early-morning hours when most people are asleep, the officers were aware of a recent brutal attack on a defenseless elderly woman next door, the search was close in time to the attack, and they relied on their substantial experience in finding the situation unusual.

They were acting for a benevolent purpose, and in light of the brutal attack a delay may have resulted in the unnecessary loss of life.

As in *People* v. *Bradford, supra,* 28 Cal.App.3d 695, one must wonder how it would have appeared if someone in apartment D had been attacked and injured and was left in that apartment while the officers were explaining the matters to a magistrate. As stated in *Tamborino, supra,* 41 Cal.3d 919, there is no ready litmus test for determining whether a particular situation negates the constitutional requirement of a warrant and in each case the claim of exigent circumstances must be evaluated on its particular facts.

In the instant case, on the record before us and for the reasons stated, we are persuaded the warrantless search was reasonable.

II. *Does the Violation of Section 825 Require Suppression of the Blood Sample?* \*

. . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Ardaiz, J., and Vartabedian, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 15, 1990.

---

\* See footnote, *ante,* page 366.