*SEE DISSENTING OPINION*

Filed 5/6/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH BROOK NUNES,<br><br>    Defendant and Appellant. | H046395<br>(Santa Clara County<br>Super. Ct. No. C1757955) |

After the trial court denied his Penal Code section 1538.5 motion to suppress evidence, defendant Joseph Nunes pleaded no contest to possessing an explosive and possessing a destructive device. He was granted probation. Defendant contends the trial court erred in denying the motion. For the reasons explained, we agree and will reverse the judgment.

## I. BACKGROUND

Defendant moved to suppress evidence from the warrantless search of a backyard shed and a cabinet within it by a fire department captain. The prosecution argued the search was valid under the exigent circumstances exception to the Fourth Amendment warrant requirement, and the trial court found the exception applicable.

At the hearing on the motion, a firefighter who is a captain in the Milpitas Fire Department testified he responded to defendant's house a little after 4:30 one afternoon based on a report of a "whole structure fire," with fire coming from the house. But when he arrived, he saw no fire and no smoke. Neighbors standing outside told him they had recently seen a plume of smoke coming from the backyard. A police officer was already

on scene; the officer "pounded on the door" of the house to check if anyone was inside. After no one answered, the fire captain opened a gate and entered the backyard.

The fire captain testified he "smelled smoke in the air that wasn't consistent of, like, cooking." He began investigating to confirm there was no imminent danger. Looking around for any active fire, he found none. Because there was still an odor of smoke, he and four other firefighters "continued to search around the back." The smell was "around the entire backyard," not coming from an identifiable place. There were some test tubes and chemistry equipment on the ground, as well as a homemade toy rocket that looked burned. Then the captain noticed a closed shed. No smoke was coming from it, nor did the smell of smoke seem to originate from there. He opened the shed as part of his fire investigation because he wanted "to make sure everything is clear."

Inside the shed was a metal cabinet. In his testimony, the captain candidly admitted there was nothing specific about the cabinet that made him think he should look inside: "Q: Was there anything about the shed in particular, the cabinet in particular that made you feel that you needed to check that area? [¶] A: Not in particular." Still, he opened the cabinet, and saw bottled chemicals he was not familiar with. Since he did not know what they were, he called the hazardous materials team to respond. Police were also called back to the scene.

The police ultimately obtained a search warrant, based in part on the chemicals found in the cabinet. After the search warrant was executed, the district attorney charged defendant with numerous offenses for possessing explosives and explosive materials. Defendant moved to suppress evidence obtained from the fire captain's initial, pre-warrant search of the backyard, shed, and cabinet.

## II. DISCUSSION

On appeal from the denial of a motion to suppress, we defer to the trial court's factual findings that are supported by substantial evidence. We then apply our

2

independent judgment to decide the legal question of whether those facts establish circumstances justifying a warrantless search, in this case exigency. (*People v. Duncan* (1986) 42 Cal.3d 91, 98.) The legal question is extremely close in this case. Our decision is guided by well-established Fourth Amendment principles: as a recognized extension of the home, the area and containers searched here are entitled to the highest degree of privacy protection our Constitution affords. And any exceptions to that protection must be, in the words of the Supreme Court, " 'jealously and carefully drawn.' " (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 455.)

The Fourth Amendment to the United States Constitution prohibits warrantless searches of places where someone has a reasonable expectation of privacy. (*Coolidge v. New Hampshire*, *supra*, 403 U.S. at p. 454.) Since privacy expectations are particularly strong in the home, warrantless searches of residences are presumed invalid. (*Payton v New York* (1980) 445 U.S. 573, 586.) Indeed, " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " (*Id.* at p. 585.) The search in this case is considered a home search for Fourth Amendment purposes, because it occurred within the "curtilage" (the area immediately surrounding and associated with the home). (*Florida v. Jardines* (2013) 569 U.S. 1, 6.) The close connection between the curtilage and the home means that the curtilage is entitled to the same degree of privacy protection as the home itself. (*California v. Ciraolo* (1986) 476 U.S. 207, 212 ["The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened."].)

Recognized exceptions to the general rule against warrantless home searches must be narrowly construed to prevent the exceptions from swallowing the important Fourth Amendment right. (See *Coolidge v. New Hampshire*, *supra*, 403 U.S. at p. 454.) One exception is when an exigent circumstance makes the needs of law enforcement so compelling that a warrantless search becomes objectively reasonable. (*Kentucky v. King*

3

(2011) 563 U.S. 452, 460.)  The exigency asserted here is "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property." (*People v. Ramey* (1976) 16 Cal.3d 263, 276.)

It was the prosecution's burden to show the fire captain's search of the cabinet was a "swift action [necessary] to prevent imminent danger." (*People v. Smith* (2020) 46 Cal.App.5th 375, 385–386.)  In our independent view, the prosecution did not meet that burden.  Key to our decision is the principle that the justification for searching based on exigent circumstances "ends when the emergency passes." (*People v. Duncan* (1986) 42 Cal.3d 91, 99.)  And here, the emergency which may have existed when fire personnel arrived on scene was no longer apparent when the fire captain opened the cabinet inside the shed.

Whether exigent circumstances justify a search depends on the circumstances known to the officer at the time of the search. (*People v. Duncan*, *supra*, 42 Cal.3d at p. 99)  According to his testimony, the fire captain initially entered the backyard because of the neighbor's statement about seeing smoke "and also the initial report of a structure fire coming from the house."  That action was reasonable and permissible under the Fourth Amendment because it was premised on a specific, articulated exigency sufficient to justify warrantless entry -- a possible house fire.  But by the time the fire captain became aware of the cabinet, the circumstances had changed significantly.  Contrary to the initial report, the house was not on fire at all.  And after an inspection of the backyard and a look inside the shed, there did not seem to be an active fire anywhere on the premises.  Nor was there any visible smoke, only a persistent odor in the general area that was not consistent with cooking.  We must evaluate whether there was an exigency sufficient to justify the search of the cabinet based on the circumstances known to the fire captain at the time of that search—which, again, had changed substantially from the time he arrived.  The question thus becomes:  Does the persistent odor of unspecified smoke allow for a warrantless search of a cabinet within a shed in a backyard?  In this case the

4

Fourth Amendment's strong protection of the right to privacy within the home requires us to answer that question in the negative.

We acknowledge that the smell of an unspecified kind of smoke, the source of which is not apparent, can justify further investigation and warrantless entry. But in this particular situation, it did not rise to the level of an *emergency* sufficient to bypass obtaining a search warrant for the contents of a cabinet which did not appear to be the source of the smell. We are not persuaded that opening the cabinet in the shed was necessary to avoid *imminent* danger to life or serious property damage, given that the urgency of the situation had dissipated. Indeed, the fire captain's testimony was that nothing "in particular" about the cabinet led him to open it. The exigent circumstances exception therefore does not extend to the cabinet search. Application of the exception requires both a specific articulation of an emergency threatening life or destruction of property, and an explanation of why the action in question was immediately necessary to address the specified emergency. With regard to the cabinet search, we see neither in this record.

*People v. Duncan*, *supra*, 42 Cal.3d 91, 105, illustrates the kind of specific, articulable facts which will support the existence of an emergency and which are absent here. In *Duncan*, the California Supreme Court upheld a warrantless search of a residence where a police officer (1) had been specifically informed that an illicit drug laboratory was operating on the premises; (2) upon arrival smelled a chemical he knew to be associated with illicit drug manufacture; (3) knew that the volatile nature of the chemicals involved in the production of drugs posed a high danger of explosion; and (4) identified the chemical odor as coming from inside the residence. (*Id*. at pp. 104–105.)

In addition to lacking specific, articulable facts indicating an ongoing emergency, the circumstances here are distinguishable from authorities cited by the attorney general involving investigations to ascertain how a fire started. Those cases hold that a

5

warrantless search for a fire's origin after it is extinguished is permissible under the exigent circumstances exception. (See, e.g, *Michigan v. Tyler* (1978) 436 U.S. 499, 509; *Michigan v. Clifford* (1984) 464 U.S. 287, 293; *People v. Avalos* (1988) 203 Cal.App.3d 1517, 1520.) In such situations, the primary justification for the search is that "[p]rompt determination of the fire's origin may be necessary to prevent its recurrence." (*Michigan v. Tyler*, *supra*, at p. 510.) Although the fire captain described seeing evidence of an extinguished fire in defendant's backyard, according to that description its source would not appear to have been the cabinet or its contents.

We view the facts here as closer to *People v. Baird* (1985) 168 Cal.App.3d 237, 245, where police officers noticed a "strong overpowering smell of ether" coming from a house and asked the fire department to investigate. (*Id.* at p. 240.) The responding fire marshal was told the police suspected a drug lab operating on the premises and confirmed the smell of ether, which he knew to be "highly flammable and explosive," so he entered the house to determine its source. (*Id.* at p. 241.) That entry was found to be unjustified under the exigent circumstances exception because the evidence did "not support a determination that any of the officials involved believed they were confronted with an 'emergency situation requiring swift action.' " (*Id.* at p. 245.) The circumstances in that case—a suspected drug lab generating the odor of an identified chemical known to be highly explosive—were substantially more pressing than those presented here.

In conducting our independent review, we are mindful of the paramount privacy interest in the home (including its curtilage), and of our duty to narrowly construe exceptions to the Fourth Amendment warrant requirement. We therefore conclude that the fire captain's opening of the cabinet inside the shed, however prudent and well intentioned, was not an action necessary to prevent imminent danger. (See *Brigham City v. Stuart* (2006) 547 U.S. 398, 404 [officer's subjective motivation is irrelevant].) Defendant's motion to suppress should have been granted as to the evidence found in the cabinet.

Because we will reverse the judgment, we do not reach defendant's challenge to the validity of certain probation conditions.

### III.  DISPOSITION

The judgment is reversed.  The case is remanded with directions for the trial court to vacate its order denying defendant's motion to suppress and to enter a new order granting the motion, as to the evidence found in the cabinet only.  Defendant shall be allowed to withdraw his no contest pleas.

_____

Grover, J.

**I CONCUR:**

_____

Greenwood, P. J.

ELIA, J., Dissenting

I respectfully dissent. I would conclude that the trial court did not err by denying Nunes's motion to suppress evidence obtained during warrantless searches of his backyard, shed, and cabinet.

I agree with the majority that the warrantless search of the backyard was justified by exigent circumstances based on the report of a structure fire and the neighbors' observations of a large plume of smoke recently coming from the backyard. I also agree with the majority's conclusion that the warrantless search of the shed was justified by exigent circumstances. The fire captain testified that there was a strong smell of smoke throughout the backyard. He found a homemade rocket device in the backyard. The device appeared burnt, but the fire captain could not determine whether the device was the source of the smoke. The discovery of the homemade device caused the fire captain to be concerned about the presence of "explosive material." The fire captain also observed chemistry equipment—including test tubes, flasks, and beakers—littered about the backyard. In my view, given the smell of smoke with no definitive source and—crucially—the possible presence of explosive material, it was reasonable for the fire captain to be concerned that the contents of the shed posed a possible fire danger. His decision to open the shed was likewise reasonable under the circumstances.

Entry into the cabinet was justified for the same reasons. The source of the smoke smell was still unknown after entry into the shed and the fire captain's concerns about the possible presence of explosive material had not been allayed. Even if the fire captain did not suspect that anything in the cabinet was actively burning, he could reasonably have been concerned that as-yet unidentified smoldering material in the cabinet, shed, or yard—or whatever ignited the initial apparent fire—might ignite the explosive materials he reasonably suspected were present.

*People v. Baird* (1985) 168 Cal.App.3d 237 is distinguishable. There, the court concluded that the exigent circumstances exception did not justify an unwarranted entry

to investigate the strong smell of ether based on the conduct of the fire marshal and other officials, which proved that they did not believe "that the situation posed an imminent danger and required immediate action when they decided to enter the premises." (*Id.* at p. 245.) Specifically, five hours passed between the "initial awareness of the odor and the entry." (*Ibid.*) No effort was made "to warn the occupants of the house, its neighbors, or passersby. When the fire marshal was called, he was told not to go directly to the house, but to contact [a police sergeant]. Instead of telephoning [the police sergeant], the fire marshal drove to the Civic Center to meet him. Among the task force of police officers and narcotics agents who went with the fire marshal to the house was one officer whose task was to *prevent* people from fleeing from the house." (*Ibid.*) No similar evidence of delay, inaction, or complacency was presented here. To the contrary, the responding firefighters acted with urgency.

I view *People v. Duncan* (1986) 42 Cal.3d 91 as more analogous. In that case, the officer was aware that "an illicit drug laboratory was operating" in a home. (*Id.* at p. 105.) Such laboratories are associated with the presence of "extremely volatile . . . chemicals, including ether . . . ." (*Ibid.*) The officer did not know "whether anything was actually being heated in the apparatus"; that is, he did not know whether there was a potential source of ignition. (*Ibid.*) Our Supreme Court concluded that "substantial evidence support[ed] the trial court's finding that [the officer] believed exigent circumstances existed" and that that belief and the officer's "response thereto were reasonable under the circumstances." (*Ibid.*) Here, the fire captain was aware that something had recently ignited, producing a large plume of smoke in the backyard. He reasonably suspected that explosive material was present after discovering a burnt homemade rocket device and chemistry equipment. Like the volatile chemicals in *Duncan*, an unidentified ignition source in the possible presence of explosive material "creates a dangerous environment, especially when handled unprofessionally . . . ." (*Ibid.*) "On these facts it was reasonable for [the fire captain] to believe that dangerous

2

[materials] were being mishandled on the premises, and to act to protect life and property from that danger." (*Ibid.*)

For these reasons, I respectfully dissent from the majority's decision to reverse the judgment.

_____

ELIA, J.

*People v. Nunes*
H046395

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Case No.: C1757955 |
| Trial Judge: | Hon. Socrates Peter Manoukian |
| Attorneys for Plaintiff/Respondent<br>The People: | Xavier Becerra<br>  Attorney General of California<br>Lance E. Winters<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Catherine A. Rivlin<br>  Supervising Deputy Attorney General<br>Jalem Z. Peguero<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant<br>Joseph Brook Nunes: | Laurel Ellis Parker Simmons<br>  Law Office of Laurel Simmons<br><br>Sixth District Appellate Program |