[Crim. No. 16137. In Bank. May 23, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
EDWARD T. SMITH et al., Defendants and Respondents.

COUNSEL

Evelle J. Younger, Attorney General, Robert R. Granucci and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Appellant.

George W. Luke, under appointment by the Supreme Court, for Defendants and Respondents.

OPINION

MOSK, J.—Defendants Edward T. Smith and Sammie A. Blinn were charged with unlawful possession of marijuana. (Health & Saf. Code,

§ 11530.) Their motion to suppress the evidence on the ground of illegal search and seizure (Pen. Code, § 1538.5) was granted, and the information was ordered dismissed (Pen. Code, § 1385). The People appeal. (Pen. Code, § 1238, subds. (a)(1) and (a)(7).)

The motion to suppress was submitted on the transcript of the preliminary examination. At that hearing only two witnesses testified, Mrs. Blanche Kirsch and Police Officer James Brown.

Mrs. Kirsch was the owner of a building in San Francisco containing two flats. She occupied the downstairs unit; defendant Blinn rented the upstairs unit, where she lived with her daughter, who was approximately six years old, and defendant Smith.

On February 24, 1970, Mrs. Kirsch returned from a shopping trip about 4 p.m. Shortly thereafter she heard Mrs. Blinn's daughter crying, and saw the girl sitting on the steps outside the upstairs flat. The girl told Mrs. Kirsch she had hurt her knee while dancing, but no injury could be seen. She also told Mrs. Kirsch she was alone in her apartment, and did not want to stay there because she was "lonesome." Mrs. Kirsch took the girl into her own flat, consoled her, and gave her some food. After about an hour, however, Mrs. Kirsch decided she could not continue to assume responsibility for the girl, and therefore called the police.

Officer Brown came in response to the call, and questioned the girl for 10 or 15 minutes. He learned she had been left alone in her apartment, had apparently fallen down and begun crying, and had been taken in by Mrs. Kirsch.

According to his testimony, Officer Brown then decided to ascertain whether the girl's mother had returned home in the interim. Accompanied by Mrs. Kirsch, he went upstairs and knocked on Mrs. Blinn's door, announcing his identification. There was no response. He nevertheless directed Mrs. Kirsch to unlock the door with her key. He stepped inside and called Mrs. Blinn's name. Again there was no response. Yet the officer "continued to go through the apartment," entering each room in turn. On a nightstand in the bedroom he found a jar containing marijuana, and additional marijuana on a newspaper on the dresser.

Officer Brown looked through the rest of the flat, then confiscated the marijuana and returned downstairs. He transported Mrs. Blinn's daughter to the Youth Guidance Center, deposited the contraband at the police station, then drove back to Mrs. Kirsch's building. By that time Mrs. Blinn and Smith had returned to their flat. Officer Brown placed them under

arrest for possession of marijuana; a small additional amount of marijuana was found on their persons.

It was stipulated the police had no warrant to search the apartment where the marijuana was found. ■ Accordingly, the burden rested on the prosecution to show justification for that search. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

The People do not seek to sustain the search on the ground it was incident to a lawful arrest or accomplished with consent.[1] Rather, the People invoke the doctrine of "necessity" derived from such cases as *People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721], *People* v. *Clark* (1968) 262 Cal.App.2d 471 [68 Cal.Rptr. 713], and *People* v. *Gonzales* (1960) 182 Cal.App.2d 276 [5 Cal.Rptr. 920]. We recently reviewed the facts of those cases in *Horack* v. *Superior Court* (1970) 3 Cal.3d 720, 725 [91 Cal.Rptr. 569, 478 P.2d 1]: "in *People* v. *Roberts,* we stated that '[n]ecessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose.' (47 Cal.2d at p. 377.) The 'necessity' in *Roberts* was that police heard a moaning sound as if from a person in distress and entered defendant's apartment to render aid; the evidence sought to be suppressed was discovered in plain sight after the valid emergency entry. Similarly, in *Clark,* police entered the defendant's apartment because circumstances apparent to the officers indicated the 'probability that a woman within the apartment was the unwilling victim of some criminal act.' (262 Cal.App.2d 471, 476.) And in *Gonzales,* a police officer discovered marijuana in a search for identification in the clothing of a man found seriously injured with an abdominal stabbing wound."

The People concede, as they must, that in the present case there was no emergency similar to that prevailing in *Roberts* and the cases cited. They contend, however, that the rule should be extended to include the "necessity" which assertedly arose when Officer Brown was faced with the quandary of what to do with a six-year-old girl who had been left alone in her apartment by her mother and had been given temporary shelter by a neighbor.

The solicitude of the police for the girl's safety and welfare was of

---

[1] Officer Brown conceded at the hearing that he did not have Mrs. Blinn's consent to enter her flat, nor had Mrs. Kirsch told him she had such consent. Indeed, Mrs. Kirsch testified unequivocally that she "never" entered Mrs. Blinn's apartment without her permission.

course commendable. But the police must also be concerned with the interest of her parent in the security and privacy of her home, an interest expressly protected by constitutional command. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 19.) The issue, therefore, is not simply whether the conduct of Officer Brown might have been "reasonable" under all the circumstances, but whether the People have shown that his entry into Mrs. Blinn's home falls within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. (*Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]; accord, *Vale* v. *Louisiana* (1970) 399 U.S. 30, 34 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969]; *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 528-529 [18 L.Ed.2d 930, 935-936, 87 S.Ct. 1727], and cases cited.) Among those exceptions is the emergency doctrine. (*Vale* v. *Louisiana, supra,* 399 U.S. at p. 35 [26 L.Ed.2d at p. 414].) ■ But the exception must not be permitted to swallow the rule: in the absence of a showing of true necessity—that is, an imminent and substantial threat to life, health, or property—the constitutionally guaranteed right to privacy must prevail.

Here the People fail to make such a showing. In their brief they attempt to paint a picture of a child in distress, crying, lonely, and hungry. But the record is otherwise: it is undisputed that Mrs. Kirsch took the girl into her apartment, consoled her, and gave her food; and on cross-examination Officer Brown acknowledged that by the time he arrived at the scene she did not appear injured and was not "upset in any way."

Instead, Officer Brown explained that he demanded entry because "I wanted to find out if [Mrs. Blinn] was there, if she could take care of her daughter, and if she may need any help." The officer knew, however, that when Mrs. Blinn's daughter had been found by Mrs. Kirsch, her mother was not in the apartment: the girl had told both Mrs. Kirsch and Officer Brown that fact, and a six-year-old is obviously competent to state whether her mother is at home or not.

The possibility remained, in Officer Brown's view, that Mrs. Blinn might have returned unnoticed to her flat during the hour that her daughter was in the care of Mrs. Kirsch. This reasoning assumed, of course, that upon finding her daughter missing Mrs. Blinn would not have been sufficiently concerned at least to come downstairs and ask whether Mrs. Kirsch knew where the child was. But even granting this assumption, the possibility that she might have returned home was easily verifiable: Officer Brown knocked on Mrs. Blinn's door, and no one answered.[2]

---

[2]If any suspicion lingered in the officer's mind that Mrs. Blinn might have failed to hear his knock, it must have been dispelled when after entering the apartment he called her name aloud and again received no response.

Yet rather than drawing the obvious conclusion that no one was at home (*Horack* v. *Superior Court* (1970) *supra,* 3 Cal.3d 720, 728 [91 Cal.Rptr. 569, 478 P.2d 1]), Officer Brown proceeded to speculate that Mrs. Blinn might nevertheless be inside but be unable to answer because she was somehow indisposed and, by that token, in need of "help." This second attempt to create an emergency where none existed is even more implausible than the first. There was not a scintilla of evidence to support the assumption that Mrs. Blinn had not only returned unnoticed to her flat but had thereupon suddenly fainted, fallen sick, or otherwise become incapacitated to the point of rendering her unable to care for her daughter and in need of police assistance. Such a belief is no less irrational than that entertained by the officer in *Horack* who received no response when he knocked on the door of an apparently empty house, and "because there was no response, he believed the persons were intentionally failing to open the door; because they were consciously refusing to open the door, he believed they had something to hide, namely, that they were occupying the house without authority." (3 Cal.3d at p. 728.) In both cases the belief upon which the officer acted was the product not of facts known to or observed by him, but of his fanciful attempt to rationalize silence into a justification for his warrantless entry.[3]

█ The trial court weighed the facts and credibility of the witnesses, and found the evidence insufficient to meet the People's burden of establishing the existence of an imminent and substantial threat to life, health, or property. We perceive no valid justification for reweighing the factual basis of this determination. We, too, conclude that Officer Brown's entry into and search of Mrs. Blinn's apartment was unlawful, and the evidence discovered as a consequence thereof—including of course the contraband taken from defendants' persons at the time of their arrest and booking— was inadmissible. The trial court's order suppressing that evidence was therefore proper.

The order appealed from is affirmed.

Wright, C. J., McComb, J., Peters, J., Burke, J., and Sullivan, J., concurred.

---

[3]Officer Brown also testified that before leaving the apartment "I believe we got a jacket for the small child, but I can't remember exactly. . . . I think we did; I'm not really sure. That was one of the purposes for going upstairs, because she needed a jacket." The People seek to magnify this minor errand into a constitutionally adequate basis for the officer's warrantless entry into the apartment. Manifestly it does not rise to the level of "necessity" as defined in the decisions.