58 Cal.App.3d 160 (1976)
128 Cal. Rptr. 852
In re DAWN O. et al., Persons Coming Under the Juvenile Court Law.
DEPARTMENT OF PUBLIC SOCIAL SERVICES OF LOS ANGELES COUNTY, Plaintiff and Respondent,
v.
HELAINE LEE NUTTER et al., Defendants and Appellants.
Docket No. 47050.
Court of Appeals of California, Second District, Division Two.
May 12, 1976.
*161 COUNSEL
Paul Boland, David A. Binder, Paul Bergman, Ronald S. Marks, Deborah Arron, Jeffrey Barron and Robert Mann for Defendants and Appellants.
John H. Larson, County Counsel, and Patrick T. Meyers, Deputy County Counsel, for Plaintiff and Respondent.
OPINION
BEACH, J.
Petitions were filed alleging that Dawn O., Kathleen O., and Gypsy S.[1] come within the provisions of Welfare and Institutions *162 Code section 600, subdivisions (a) and (d). The trial court found that the minors fall within subdivisions (a) and (d) of section 600.[2] The mother of all three children and the father of Gypsy appeal from the order exercising jurisdiction over the children.

FACTS:
The following evidence was produced at the hearing:
After attending school on February 3, 1975, Dawn O. accompanied her friend Jackie to Jackie's home. She had been going home with Jackie after school for almost a month although her mother had never in any way communicated with Mrs. Rowell, the housekeeper at Jackie's home. Normally, Dawn would come about 3:15 in the afternoon and would stay until dark; Mrs. Rowell fed her every day at about 4:30.
On February 3, after feeding Dawn and Jackie, Mrs. Rowell sent Dawn home about 5:15 p.m. Dawn returned after about an hour. Mrs. Rowell kept her and eventually called the juvenile authorities about 10 p.m. Officer Terence Dean, who had had contact with Dawn's mother in the past, went to Mrs. Rowell's house and spoke with her and Dawn. Talking to Dawn on the way to her house, he gathered the impression that she had a sister. When they got to the house, he knocked several times and entered through an adjacent door that Dawn told him led to her apartment.
At this point in the testimony, counsel for the mother and father made an objection that this was an illegal entry and any observation made thereafter or evidence taken from the apartment should be suppressed. The trial court held that the evidence was admissible in that the exclusionary rule does not apply to these proceedings and that, at any rate, the officers made a legal entry under these facts.
Upon entry, the officers saw the kitchen with many dirty dishes, spoiled food on the floor and in the refrigerator, and bags of trash and other combustibles on top of the stove. There was a foul odor in the kitchen. In the dining room they found a crib with an infant. The room was cluttered with dirty clothing and had dirt on the floor and soiled carpeting; it was in a general state of disarray. The child in the crib had soiled diapers. In the northeast bedroom the officers found another child *163 on a mattress on the floor. Like the child in the crib, she was not covered. The mattress was soaked with urine and the room was in a filthy condition. When the officers reached the living room, they found a rifle next to the mattress. When Officer Dean unloaded the rifle, it discharged and a bullet went into the ceiling.
At about this time, the mother returned. She said that she had been looking for her daughter. There was evidence of her knowledge of minimal standards of housekeeping in that she had been warned in May of 1973 of this matter. Officer Dean told her that they were taking the children into protective custody.

CONTENTIONS ON APPEAL:
1. The trial court committed reversible error by ruling that as a matter of law the exclusionary rule did not apply to this procedure.
2. No exceptions to the search warrant requirement are applicable in these circumstances, and the entry and search were illegal.

DISCUSSION:
(1) 1. We hold that the entry was legal and therefore it is unnecessary to discuss whether the exclusionary rule does or does not apply to juvenile dependency hearings.
Where the police do not have a warrant, the burden rests on the prosecution to show justification for the search. (Badillo v. Superior Court, 46 Cal.2d 269, 272 [294 P.2d 23].) "It is well settled that emergencies of overriding magnitude may justify a search conducted without prior judicial approval. [Citations.]" (Jacobs v. Superior Court, 36 Cal. App.3d 489, 495-496 [111 Cal. Rptr. 449].) There must be a "showing of true necessity  that is, an imminent and substantial threat to life, health or property...." (People v. Smith, 7 Cal.3d 282, 286 [101 Cal. Rptr. 893, 496 P.2d 1261].) We have such a showing in the instant case.
Dawn had been locked out of her house. Officer Dean felt from his conversation with Dawn on the way to the apartment that she had a sister. He knocked several times at the door before entering by another door pointed out to him by Dawn. There were lights on in the apartment. This situation is different from People v. Smith, supra, 7 Cal.3d at page *164 287, where lack of an answer to a knock was held not to warrant an assumption that the adult inside had "suddenly fainted, fallen sick, or otherwise become incapacitated to the point of rendering her unable to care for her daughter and in need of police assistance." In the instant case, the sister might still be in the apartment unattended, as indeed she and another sister were. While the entry in Smith, supra, might be unreasonable, we think the actions of the officers in the instant case were both reasonable and commendable.
In the matter at bench we are not concerned with justification for a search. There was no search made, tried or intended. The only issue is whether the entry was reasonable. If so, the observations of the condition of the place were proper. An effort to return a small child to its home after it has been found locked out, lonely and unattended is not unreasonable. Further, under such facts, it is not unreasonable to determine if the child may be safely left at its home. The discovery of the unattended child here reasonably gave rise to the concern that another child might be unattended in the house.
People v. Smith, 7 Cal.3d 282 [101 Cal. Rptr. 893, 496 P.2d 1261] is distinguishable. The Supreme Court there flatly said that "the record is otherwise" than that "of a child in distress, crying, lonely and hungry." At bench but for the humanitarian care by Mrs. Rowell the child would have been in distress, crying, lonely and hungry. In Smith, the court declared that the officer knew no one was home, because he was so told by the child. Here the officers had no knowledge if anyone was home; and if a child should be there, they did not know what the conditions were for its safety and welfare. In Smith, the officers were let into the apartment by the apartment manager at about 5 p.m. Here, the officers were let in by the little girl at about 10:30 p.m. This is a late hour for a small child to be required to take care of herself. The lateness of the hour makes any concern for her, her brothers or sisters, and about the presence of her parents and the conditions of her home much more reasonable than might be in the case of an entry at 5 p.m.
The judgment is affirmed.
Fleming, Acting P.J., and Compton, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied July 8, 1976.
NOTES
[1] The amendments to the petition allege that Dawn was five years old on April 13, 1974; Kathleen was two years old on September 23, 1974; and Gypsy was born March 13, 1974.
[2] Unless otherwise indicated, all references are to the Welfare and Institutions Code.