**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David William BRADLEY,**
**Defendant–Appellant.**

**No. 02–10168.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 2003.

Filed March 11, 2003.

---

Timothy L. Zindel, Assistant Federal Defender, Sacramento, CA, for the defendant-appellant.

William S. Wong, Assistant U.S. Attorney, Sacramento, CA, for the plaintiff-appellee.

Before SCHROEDER, Chief Judge, NOONAN and CLIFTON, Circuit Judges.

## OPINION

SCHROEDER, Chief Judge:

This is an unusual case in which the district court invoked the emergency doctrine to justify a warrantless entry by sheriff's deputies into a private residence. The officers entered the home to locate a nine-year-old boy whose mother they had just arrested on drug charges. After the officers obtained a warrant on the basis of what they had seen in the house and conducted a search, the defendant-appellant David Bradley moved to suppress evidence found in the home he occupied with the boy's mother. The district court invoked the emergency doctrine after an evidentiary hearing that resulted in a finding that the officers made the initial entry "because of a genuine concern for the welfare of the child inside." After the district court denied the defendant's motion to suppress, the defendant pleaded guilty to the crime of possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He now appeals.

*FACTS*

At approximately 1 a.m., on May 20, 2001, the police stopped Bradley as he was driving with his girlfriend, Tammie Williams, and her two-year-old daughter. A consensual search revealed methamphetamine in the car and in Williams' purse. Deputy Sheriff Tim Wetzel arrested both Bradley and Williams, and took Williams' daughter into protective custody.

Wetzel knew from a previous incident involving the defendant that Williams also had a nine-year-old son. When Wetzel asked Williams where her son Christopher was, she told him that he was "at home with a friend." Wetzel and a second officer, Sergeant Contini, went to the home

where Williams and Bradley resided. They knocked on the front door, but nobody answered their knocks.

Wetzel then contacted the officers transporting Williams and asked her again where her son was. This time she said he was across the street with a neighbor. The two officers went across the street and woke the neighbor, who told them that he did not have Christopher. The officers returned to Williams' house and knocked again on the front door. They then went around to the back of the house, where they found the door unlocked. Wetzel and Contini opened the back door, announced themselves, and walked into the house. At that time, Christopher came out of the front room.

Wetzel walked Christopher to his bedroom to help him get dressed so he could be taken into protective custody, and Wetzel walked through the house to see if anyone else was there. As he went through the house, Wetzel observed a cash register, with a severed electrical cord, that looked as if it belonged in a retail gun store. He also observed a cup with hypodermic needles sticking out of it sitting on a desk.

While Sergeant Contini drove Williams' two children to a receiving home, Wetzel phoned in his observations to another detective, who used the information to obtain a search warrant to search for the cash register and other drug evidence. After the search warrant was signed, Wetzel and other officers began to search the residence. One of the items the search revealed was a firearm in a drawer in the master bedroom. Because Bradley had previous felony convictions, he was indicted for possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Bradley moved to suppress the evidence seized during the execution of the search warrant. The district court denied Bradley's motion to suppress the evidence. It found that the officers' warrantless entry into the home was justified under the emergency doctrine and was not in violation of the Fourth Amendment. Bradley subsequently pleaded guilty to the firearm possession charge.

## INITIAL ENTRY INTO THE HOUSE

This court has previously recognized the emergency exception to the Fourth Amendment's warrant requirement in *United States v. Cervantes*, 219 F.3d 882 (9th Cir.2000). In *Cervantes*, the court concluded that the emergency doctrine justified an officer's entry into an apartment to investigate a chemical odor consistent with methamphetamine production. *Id.* at 891. The court applied the doctrine because the officer reasonably believed that there was an emergency requiring his immediate assistance due to the risk of explosion created by methamphetamine labs. *Id.* In addition, the court concluded that his entry was not motivated by the desire to collect evidence, and that there was a reasonable basis to associate the apartment searched with the emergency. *Id.* Other circuits have also adopted an emergency exception. *See, e.g., United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir.2002); *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir.1998); *Root v. Gauper*, 438 F.2d 361, 364 (8th Cir.1971).

■ The emergency doctrine is derived from police officers' community caretaking function. *Cervantes*, 219 F.3d at 889. The Supreme Court recognized this function in *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), when it acknowledged the right of police to respond to emergencies. In *Mincey*, the Court reasoned that an entry or search that would otherwise be barred by the Fourth Amendment may be justified by the need to protect life or avoid serious injury. *Id.*

The appropriateness of the emergency doctrine is best understood in light of the

particular facts of a case in which it is invoked. The officers here knew that Christopher's mother was not caring for him, and they could not locate him in the places she said he was. They were also unaware of the safety conditions inside the house. The possibility of a nine-year-old child in a house in the middle of the night without the supervision of any responsible adult is a situation requiring immediate police assistance. *See State v. Peterson,* 273 Ga. 657, 543 S.E.2d 692, 695 (2001); *State v. Plant,* 236 Neb. 317, 461 N.W.2d 253, 262–63 (1990); *In re Dawn O.,* 58 Cal.App.3d 160, 128 Cal.Rptr. 852, 854 (1976).

■ Further, the district court's determination that the officers acted out of a genuine concern for Christopher's welfare is supported by the record. We review such determinations under the clearly erroneous standard. *See Cervantes,* 219 F.3d at 891. Wetzel specifically testified that he entered the house to determine if Christopher was being supervised by a responsible adult. Additionally, before the officers entered the house, they took several other steps. They knocked at the front door first, asked Williams again where Christopher was, and went across the street to wake up a neighbor and ask him about the boy. This evidence supports the district court's finding that the officers' entry was motivated by a concern for Christopher's welfare. Thus, we agree with the district court that Wetzel and Contini's entry was lawful.

*OFFICERS' EXAMINATION INSIDE THE HOUSE*

■ Bradley contends that even if the entry itself was lawful, the officers' "protective sweep" conducted inside the house was in violation of the Fourth Amendment. In fact, the record does not reflect that in obtaining the warrant, the officers made use of any information they may have obtained in the course of any intrusive search. Rather, the record reflects that the officers lawfully walked through the house in order to assist Christopher in dressing. All of the evidence described in the search warrant to establish probable cause for the subsequent search was in plain view. Thus, the use of the evidence was lawful. *See United States v. Hudson,* 100 F.3d 1409, 1420 (9th Cir.1996).

AFFIRMED.