Mark **MARTIN**, Plaintiff–Appellant,

v.

**CITY OF OCEANSIDE; Shawn Kelly; Benjamin Ekeland, Defendants–Appellees.**

No. 02–56177.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 9, 2004.[*]

Filed March 11, 2004.

---

[*] This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

James E. Dunn, San Diego, CA, for the plaintiff-appellant.

Pamela J. Walls, Assistant City Attorney, Oceanside, CA, for the defendants-appellees.

Before: TROTT, RAWLINSON, and BEA, Circuit Judges.

TROTT, Circuit Judge.

## I

### Overview

Mark Martin ("Martin") sued the City of Oceanside, California ("City") and police officers Shawn Kelly and Benjamin Ekeland ("officers") under 42 U.S.C. § 1983. He alleged that the officers violated his Fourth Amendment rights during an incident in which they entered Martin's home without a warrant in order to check on the welfare of an occupant. The district court determined that the officers were entitled to qualified immunity, and thus granted their motion for summary adjudication. The court also granted the City's motion for summary adjudication on the ground that the City's officers had not committed a constitutional violation. Martin appeals the district court's specific determination that the officers were entitled to qualified immunity based on the "emergency aid" exception to the Fourth Amendment warrant requirement.

## II

### Background

On December 28, 1999 Dr. Ronald Trotman phoned the Oceanside Police Department from Portland, Oregon with an urgent request to check on the safety of his daughter, Traci Trotman ("Traci"). He had been unable to reach her for several days and told the police he was "extremely concerned" about her welfare, "and felt she could be in trouble." *Martin v. City of Oceanside*, 205 F.Supp.2d 1142, 1144 (S.D.Cal.2002). He also gave the police an accurate description of her car. Around 4:30 p.m., acting on this "check the welfare" request, Officer Kelly arrived at Martin's home, where Traci was reportedly living as a roommate. He knocked and rang the doorbell, but no one answered. Unbeknownst to Officer Kelly, Martin and Traci were inside the home, but did not respond to his implicit request for an audience. Although they were aware that a uniformed police officer was at the door, they mistakenly and without substantial reason assumed that Martin's ex-wife had called the police and made a false accusation, and thus irresponsibly decided to ignore the officer's attempt to speak with them.

Officer Kelly observed that Traci's car was in the driveway, and had headquarters call her phone number. Traci and Martin ignored the call. Officer Kelly then walked to the side of the house where he found an unlocked door to the garage. It is disputed whether or not Officer Kelly announced his presence before entering the garage, but once inside he found an unlocked door leading to the main part of the house. At this point, Officer Kelly exited the garage. "Fearing that a crime could be in progress," he requested an additional officer. *Id.* at 1145.

While waiting for the other officer to arrive, Officer Kelly went next door, where the neighbor told him that she had seen a woman at the residence on Christmas day, three days prior, and a man there the day before. She added that because the occupants' cars were in the driveway, they should be home.

When Officer Ekeland arrived, both officers entered the house through the garage with their flashlights on and guns drawn. The officers quickly checked the downstairs, found no one, and then proceeded up the stairway to the second floor. When they got to the top of the stairs, Traci exited the bedroom at the other end of the hallway. The officers requested that Traci identify herself. After a short argument about the officers not having a warrant, she produced identification. The officers confirmed that she was safe, and left the house shortly thereafter.

## III

### Standard of Review

■ We review de novo the district court's grant of summary judgment. *Jackson v. City of Bremerton,* 268 F.3d 646, 650 (9th Cir.2001). Qualified immunity is particularly amenable to summary judgment adjudication because "the entitlement is an *immunity from suit* rather than a mere defense to liability." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (internal quotations omitted)). However, we must still determine "whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

## IV

### Qualified Immunity

Martin alleged that the officers "violated his Fourth Amendment rights in three ways: first, by entering his house without a warrant or consent; second, by failing to knock and announce their presence as they entered; and third, by pointing their guns at him in the hallway of his house." *Martin,* 205 F.Supp.2d at 1148–49. Preliminarily, we determine that Martin has forfeited review of the claim that the officers' use of their guns constituted excessive force because the issue is not "specifically and distinctly" argued in his opening brief. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001). Therefore, only the warrantless entry and failure to "knock and announce" claims are subject to review.

■ In *Saucier v. Katz,* the Supreme Court established a two-part analysis for determining whether qualified immunity attaches to specific circumstances. 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The threshold inquiry, assuming as true the facts alleged by the injured party, is whether "the officer's conduct violated a constitutional right[.]" *Id.* If the answer to this question is "no," then the officers are entitled to qualified immunity. If the answer is "yes," however, then we must ask whether that right was clearly established. *Id.*

### A. Emergency Aid Exception to the Warrant Requirement

■ Based on the facts as alleged by Martin, we conclude, as did the district court, that the "emergency aid" exception to the warrant requirement is applicable, and thus his constitutional rights were not violated. The "emergency aid" exception, adopted by this court in *United States v. Cervantes,* has three prongs:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approxi-

mating probable cause, to associate the emergency with the area or place to be searched.

219 F.3d 882, 888–90 (9th Cir.2000) (quoting *People v. Mitchell,* 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 609 (1976)). In an emergency situation, police officers are permitted warrantless entry into a home as part of their "community caretaking function." *United States v. Bradley,* 321 F.3d 1212, 1214 (9th Cir.2003); *see also Cervantes,* 219 F.3d at 889.

■ The district court correctly determined that the "emergency aid" exception provided the officers with qualified immunity; however, the court applied the exception under the second prong of *Saucier* rather than the first. In performing the initial inquiry, we are obligated to accept Martin's facts as alleged, but not necessarily his application of the law to the facts. The issue is not whether Martin states a claim for violation of his Fourth Amendment rights, but rather whether the officers *actually* violated a constitutional right. Because the "emergency aid" exception applies, we answer the threshold inquiry of *Saucier* in the negative. *See Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ("[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."). However, this minor error does not affect the ultimate determination by the district court that the officers were entitled to qualified immunity.

As discussed in the district court order, all three prongs of the *Cervantes* test are satisfied in this case. First, the officers had reasonable grounds to believe that there existed an immediate need for their assistance. Traci's father phoned the police stating that he was urgently concerned for the welfare of his daughter, and that she may be "in trouble" inside the house. Pursuant to receiving this information, the officers arrived at Martin's residence, where both Martin's and Traci's cars were in the driveway. The suggestion by the neighbor that Martin and Traci should be home, in connection with the lack of response to repeated knocking, and an unanswered call to Traci's phone supported the officers' reasonable belief that they had a duty under the community caretaking function to investigate a potential emergency situation.

Second, there is no doubt that the officers' search was not motivated by an intent to arrest or to seize evidence. The only reason they were at Martin's home was in response to Traci's father's request to check the welfare of his daughter. Once the officers' identified Traci and were able to see that she was not in trouble, they left the residence shortly thereafter. Martin provides no evidence to suggest any motivation to the contrary.

Third, the Officers had a reasonable basis for associating a potential emergency with Martin's house. As discussed in *Cervantes,* in order to satisfy the third prong, an officer's search must be limited to only those areas necessary to respond to the perceived emergency. 219 F.3d at 890. The officers' reasonable conclusion that a potential emergency situation could be located inside Martin's home was sufficiently supported by a father's concern about his daughter, the neighbor's indication that the daughter should be in the residence, the presence of her car in the driveway, and the unexplained failure to respond to their knock on the door. The officers did no more than search the areas of Martin's home where Traci could potentially be located, and thus the third prong is satisfied.

In *Murdock v. Stout,* we determined that exigent circumstances justified a warrantless entry under conditions similar to

those the officers confronted in this case. 54 F.3d 1437 (9th Cir.1995). Although *Murdock* was decided prior to *Cervantes,* its analysis is very similar to the three-prong approach we have since adopted. In *Murdock,* three police officers arrived at a house after having received a call from a passing neighbor who had observed what he believed was suspicious activity at the home. When the officers arrived, the exterior doors were secure with the exception of the rear sliding door, which was slightly open. In addition, the lights and television were on, indicating that someone was or should have been at the residence. The officers shouted their presence, but received no response. No one answered the phone when it rang. The officers entered the home through the open door, and after a cursory search found the resident taking a nap. We held that

> indicat[ions] that a resident should have been home, but was not responding, combined with the earlier report of suspicious activity and the presence of the open door tip the scales to supply the officers with probable cause to believe ... that a resident in the house might have been in danger or injured.

*Murdock,* 54 F.3d at 1442.

Just as in *Murdock,* there were indications here that either Traci or Martin should have been home, and indeed they were both inside. *Id.* In addition, both *Murdock* and the instant case involve reasonable requests that prompted the police to fulfill their responsibility to investigate potentially suspicious activity and protect the communities they serve. *Id.* at 1442. Therefore, the officers' warrantless entry falls squarely within the emergency aid exception and community caretaking function, and as a result Martin's Fourth Amendment right to be secure in his home clearly was not violated.

**B. The "Knock and Announce" Requirement**

■ Martin contends that the police "failed to state the purpose of their intrusion" before entering his home. He characterizes this alleged failure as a constitutional violation of the "knock and announce" component of the Fourth Amendment. The district court granted summary judgment to the appellees on this issue on either of two grounds: 1) they substantially complied with the knock and announce rule, or 2) the entry was justified by the emergency aid exception. Without disagreeing with the district court, we grant summary judgment to the officers on this issue on a different but related ground: under the first prong of *Saucier,* Martin suffered no violation of the Fourth Amendment. There exists no genuine issue of material fact on this issue.

The facts are clear. The officers knocked on Martin's door shortly after 4:30 p.m. in the afternoon. The officers were in uniform. Martin heard the officers knocking and observed Officer Kelly through the peephole in his door. Martin recognized Officer Kelly as a police officer. Martin chose not to answer the door, opting instead to leave the area of the doorway and go upstairs to Traci's bedroom where he called his lawyer and secreted himself from the police. To see this set of facts as a violation of the Fourth Amendment's knock and announce rule is utterly incomprehensible. The prophylactic purpose of the rule is not served where the occupants of the home know that it is the police knocking at the door and simply leave the area and choose not to answer.

Under these circumstances, the officers' entry was reasonable. *See Wilson v. Arkansas,* 514 U.S. 927, 936, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (holding that "although a search or seizure of a dwelling

might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry[,]" and leaving to the lower courts "the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment"). Martin had ample opportunity to learn their purpose, and he ignored it. He and he alone is responsible for the officers' entry after he chose to play hide-and-go-seek with the authorities. His inexcusable behavior only added justification to believe that Traci's father's fears may have been well-founded. Had Martin simply responded, as a normal citizen, to the knock on his door, none of the events about which he complains would have happened. He is the "victim," not of the officers, but of his own faulty judgment and behavior. Moreover, because he left the area and went upstairs and into a bedroom to make a phone call, his allegation that he did not hear the police announce themselves is insufficient to create a genuine issue of disputed fact as to whether they did so, as they aver they did.

As discussed in the previous section, the officers reasonably believed that someone inside Martin's home was potentially in need of help, and they were motivated by a desire to assist that person rather than gather evidence. The officers' reasonable belief that Traci may have been in need of assistance inside the home justified their visit and subsequent entry. Citizens in the City of Oceanside would have been justifiably outraged if the officers had delayed their community caretaking responsibilities only to discover later that Traci had become the victim of an otherwise preventable crime or was in need of assistance. The district court's order, granting

summary adjudication to the officers and the City as to the 42 U.S.C. § 1983 claims, is AFFIRMED.