Filed 4/24/14  P. v. Castano CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063571 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN270509) |
| EUTIQUIO CASTANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Steve Oetting and Andrew Mestman, Deputy Attoneys General for Plaintiff and Respondent.

A jury convicted Eutiquio Castano of three counts of committing forcible lewd acts upon a child under Penal Code section 288, subdivision (b)(1)[1] and six counts of committing lewd acts upon a child under section 288, subdivision (a) after he was discovered in a motel room molesting his 11-year-old daughter. Castano contends his conviction must be reversed for three reasons: (1) the trial court erred in denying his motion to suppress evidence obtained after the police officers entered the motel room without a warrant because the entry was not justified by exigent circumstances; (2) there was insufficient evidence to support his convictions for forcible lewd acts upon a child since there was no evidence the acts in the motel room occurred under duress; and (3) the prosecutor committed misconduct during closing argument. We find no merit in these contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Evidence Regarding Motion to Suppress*

Castano moved to suppress evidence obtained as a result of police officer's entry into the motel room without a warrant. The following evidence was presented at the hearing regarding the circumstances surrounding the entry into the motel room.

On a Wednesday in December 2009, the Escondido police department received a suspicious circumstances call from the front desk clerk at Mt. Vernon Inn. The clerk reported a male checked in at 8:30 in the morning with his 11-year-old daughter saying

---

1  All unspecified statutory references are to the Penal Code.

they needed a single bed for a couple of hours. Several hours later, the male called the motel's front desk asking for access to pornography channels on the television.

When the police officers arrived, they questioned the front desk clerk and looked at the surveillance video of the man and his daughter. The girl who was carrying a backpack, appeared to be a minor under the age of 14. She did not appear upset, scared or agitated.

An officer went into a vacant room next door to Castano's room to determine if people were in the room and "to ascertain, if possible, what type of activity was going on in the room." The officer heard people in the room, but could not determine what was being said or done.

The officers formed the opinion there was reasonable cause to believe child molestation or sexual assault of a minor was occurring in the room and it was their duty to enter the room. They based their opinion on the information that a school-aged girl checked in to the motel on a school day with a male adult who asked for a single bed for a couple of hours and then asked for access to pornographic material.

When the officers unlocked the door with a key card, they found the door was barricaded by a table. The officers pushed through the door and table, entered the room and announced themselves. The officers did not knock or otherwise attempt to contact Castano before entering.

The court denied the motion to suppress, ruling the officers reasonably entered the room without a warrant based upon either the exigent circumstances or welfare check exceptions to the Fourth Amendment protection against unreasonable searches.

3

## II

### *Trial Evidence*

A.   *Background*

The minor, Castano's daughter, was 11 years old at the time of the incident in 2009.[2] She has three older brothers from her father and mother and two younger stepsisters, from her father and his girlfriend. The minor's mother left when the minor was very young.

When she was in the fourth grade, the minor lived with her paternal grandparents. Her paternal grandfather inappropriately touched her at night. The minor told her cousin about the touching, but afterward regretted doing so because the minor had to move out of her grandparent's house and was told she could not spend time with that side of the family. The minor did not think the authorities handled the situation well because nothing happened to her grandfather.

Thereafter, the minor lived with various relatives, but primarily with her father and brothers. Castano's girlfriend lived with them off and on along with the girlfriend's daughters, including one who was born in September 2009. Castano was the only one in the family who worked. They lived in motels, a drug treatment shelter (for Castano and his girlfriend) and apartments.

---

2      For confidentiality, we refer to the minor victim as "the minor."

B.    *Prior Incidents of Molestation by Castano*

The first time the minor thought Castano touched her inappropriately was when he snapped the waistband of her pajamas.  Thereafter, when they were living in an apartment in Escondido (after the incident with the minor's grandfather), Castano touched the minor's vagina with his hands and rubbed his penis over and under her clothing.  He would do this when everyone was sleeping and would do it almost every night.  He would tell her to come downstairs and he would have her lie on top of him.  He would also touch her buttocks.  This usually occurred at night, but sometimes he would keep her home from school.[3]

The touching usually stopped when Castano's girlfriend lived with the family.  Castano did not touch the minor at the shelters or when they lived in motels.  However, when they moved to an apartment in Vista, even though the girlfriend was living with them, Castano began touching the minor again and having her orally copulate him.

---

[3]    When the minor was initially interviewed, she was reluctant to talk.  She initially denied Castano touched her anywhere other than her vagina, it was over her clothes and it only occurred one time.  Over time, the minor revealed further information and further instances of molestation.  The minor did not want authorities involved because she thought they did not do anything about her grandfather and they would not do anything about her father.  She admitted at trial she left things out of her interview statements saying it was easier to talk about after time passed.  She was embarrassed to tell people her father had been doing this to her for some time before December 9, 2009.  According to a social worker who conducted two forensic interviews of the minor, studies show it is a difficult process for children to disclose sexual abuse and, when they do, it is delayed.  They often disclose incrementally, i.e. when a child does disclose, she or he provides partial bits of information and it is not unusual for the child to provide additional information as time passes.  In the social worker's opinion, if a child disclosed a previous incident of abuse and it disrupted the family, the child would be more reluctant to disclose again.

5

At night, Castano would enter the room the minor shared with her sister and brothers and he would touch the minor's buttocks and anus over and under her underwear while her siblings were asleep. On one occasion, he took her to the living room where they laid on the floor under a blanket and he touched her either on the vagina or on the anus. He stopped suddenly and told her to lay still because Castano's girlfriend was entering into the room. When his girlfriend saw them, she told the minor to return to her room. Castano and his girlfriend got into an argument.

On another occasion, Castano took the minor to a baseball field near their apartments and made her orally copulate him. Thereafter, he made her orally copulate him on other occasions, including in the bushes near the transit center, the ball field and in the bathroom of their home. Castano also told the minor to masturbate in front of him and made her watch pornography with him.

The minor did not tell anyone. The minor testified she did not want to ruin anything since Castano was the only one in the family who worked and paid the bills. The minor liked living in an apartment and was afraid if she told, her father would get in trouble and they would end up living in motels or shelters.

C.   *Motel Incident*

On the morning of December 9, 2009, the minor planned to go to school. She walked with her brother and father to the transit center where she usually took a bus to school. However, when she heard her father calling motel rooms and asking for pricing, she knew she was not going to school. She was worried and knew "he would do stuff" because "he did it all the time."

6

Castano told the minor's brother he did not have to go to school and gave him money for a bus pass to go to Escondido to hang out with his friends. Castano told the minor she would hang out with him. He told her they were going to pay the phone bill and/or get her a cell phone.

Castano took the minor by public transportation from Vista to Escondido. They ordered breakfast from a fast food restaurant and then went to the Mt. Vernon Inn.[4]

When they arrived at the motel at approximately 9:00 a.m., Castano got a room. According to the motel manager, Castano identified the minor as his daughter and asked for a room with one bed saying he needed to shower and sleep.[5] When the manager asked if he wanted a room with two beds, Castano said they only needed one bed because they were just staying for a couple of hours.[6] The girl did not look afraid and did not say anything.

When they got to the room, they watched television. The minor ate a little, but felt sick to her stomach because she knew what was going to happen.

Castano smoked methamphetamine. He walked around the room looking outside. He rearranged the furniture, made sure the curtains were closed and placed a table in front of the door. He also placed tissue in the peephole of the door. The minor thought

---

[4]    The family previously lived at the Mt. Vernon Inn for a few months.

[5]    The motel manager acts as the front desk clerk as part of his duties.

[6]    The price for a room with one king sized bed is the same as a room with two full sized beds.

he was paranoid, but did not feel she could leave. Castano told the minor to say they ran errands that day if his girlfriend asked where they were.

Castano told the minor to take a shower. Castano turned on the shower and, after the mirror was foggy, he put strips of toilet paper over the mirror and covered the window in the bathroom with a towel before he left the bathroom. After she got into the shower, he came back into the bathroom and sat on the toilet seat across from the shower. He opened the curtain and told her to wash herself while he watched. He made her bend over while she cleaned herself.

After the minor got out of the shower, Castano told her to put on his black ribbed undershirt. The minor understood he wanted her to wear nothing but his undershirt, but she put it on over her jeans and shirt.

Castano told her to take off her pants. They laid on the bed and he let the minor smoke cigarettes. Castano pulled the minor's underwear down and touched and licked her vagina. He also made her touch his penis with her hands and mouth. At some point, they got up from the bed and went to the bathroom where Castano made her orally copulate him while she kneeled on a pillow.

Around noon, the motel manager received a call from Castano's room. A male voice asked if they provided adult or pornographic movies, which they did not. After receiving this call, the motel manager called the police. He told the police a man checked in with his daughter asking for one bed and saying they were only going to stay for a few hours. The motel manager also told the police the man called the front desk and asked for pornographic material.

8

When the police officers arrived, the manager gave them a key card to get into Castano's room. The police officers used the key card to unlock the door, but encountered an obstruction when they tried to open the door. After pushing the door open, the officers realized a table had been placed in front of the door.[7]

The minor heard the door to the room bang open when she was in the bathroom with Castano. Castano jumped and looked at the door. The minor saw someone pushing the door open with the table in the way. She knew it was the police and she panicked because she knew they would take him away.

As the officers entered the room, Castano came out of the bathroom shirtless and adjusting his unzipped pants. The minor come out of the bathroom behind him wearing a T-shirt and panties and covering herself with a pillow.

They noticed a refrigerator blocking an access point between the two rooms and another table moved next to the window with the drapes closed. Dresser drawers were propped against the window to prevent the drapes from moving. In the bathroom strips of toilet paper were on the mirror.

The minor did not feel she could stop the conduct in the motel room. The minor was afraid if she left or told, she did not know where her family would end up.

After Castano was arrested, the minor told a police sergeant she was scared she would not see her dad again. She was concerned because her grandfather did the same

---

[7]     For purposes of trial only, Castano stipulated that entry into the room was lawful. However, he preserved the right to challenge the entry on appeal.

thing and she could not see him anymore. She was also scared they would have nowhere to go without her father.

DISCUSSION

I

*The Entry Was Justified*

Castano contends the court erred in denying his motion to suppress evidence obtained as a result of officers entering the motel room without a warrant. He argues the arresting officers lacked a reasonable basis to believe the minor was in imminent risk of danger to justify warrantless entry into the motel room under either the emergency aid exception or the community caretaking exception to the Fourth Amendment prohibition against unreasonable search and seizure. We disagree.

In reviewing a court's ruling on a motion to suppress, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) Since the facts related to the entry of the motel room are essentially undisputed, we independently review the application of law to the facts.

"The Fourth Amendment to the federal Constitution guarantees against unreasonable searches and seizures by law enforcement and other government officials ." (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156.) "Thus, 'searches and seizures inside a home without a warrant are presumptively unreasonable.' (Citation.) 'Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the

10

warrant requirement is subject to certain exceptions.' " (*People v. Troyer* (2011) 51 Cal.4th 599, 602 (*Troyer*).)

"One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. ' "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal about an exigency or emergency." ' [Citations.] Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." (*Brigham City v. Stuart* (2006) 547 U.S. 398, 403.)[8]

"There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*Troyer*, *supra*, 51 Cal.4th at p. 606, internal quotations omitted.) "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively,* justify [the] action.' " (*Brigham City v. Stuart, supra,* 547 U.S. at p. 404.) "[T]he police did not need 'ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception' to the warrant requirement in order to enter the [dwelling] but merely ' "an objectively reasonable basis for believing" that medical assistance was needed, or persons were in danger.' " (*Troyer*, *supra*, at p. 602.)

---

8     The Fourth Amendment protection extends to motel and hotel rooms in which the occupant has a reasonable expectation of privacy. (*Stoner v. California* (1964) 376 U.S. 483, 490; *People v. Williams* (1988) 45 Cal.3d 1268, 1297.)

Castano argues there was no basis to believe "the minor required swift help" because she did not appear to be agitated or in distress when they checked in to the motel, there were no complaints or suspicious noises coming from Castano's room and because pornographic material was not available to fulfill his request. He argues, "the officers' suspicion amounted only to mere speculation that something may have been amiss."

The Supreme Court rejected a similar argument that police must have "probable cause" to enter a home under the emergency aid exception. The court explained, "the importation of a concept governing police officers 'engaged in the often competitive enterprise of ferreting out crime' [citation] [does not] make sense under the emergency aid exception, where the police must make split second decisions as to whether someone is in need of immediate aid, not whether someone could be arrested for a crime." (*Troyer*, *supra*, 51 Cal.4th at p. 606.) " '[T]he business of policemen and firemen is *to act*, not to speculate or meditate on whether the report is correct.' " (*Ibid*.)

In this case, the officers responding to the suspicious behavior call knew a male adult checked into a motel room during school hours on a weekday with a young girl who he described as his daughter. By viewing the surveillance video, the officers confirmed the girl was of tender years, under the age of 14. They knew the male asked for a room for a couple of hours and specifically requested a single bed after being offered the option of two beds. They also knew the male requested pornography only a short time before they received the call.

The facts of this case do not show mere speculation to justify entry, as was the case in *People v. Smith* (1972) 7 Cal.3d 282. In *Smith*, the police were called by a

neighbor when a child was found after being left alone in her apartment. However, the girl was taken in by a neighbor and was cared for until the police arrived. The officer in that case searched the child's unoccupied apartment without a warrant and discovered marijuana. Under those circumstances, the court held the officer's speculation that the child's mother may have returned home unnoticed and she did not respond to knocks on her door or her name being called by the officer because she was somehow indisposed, was not sufficient to allow entry into the apartment under the emergency aid exception. (*Id.* at pp. 286-297.)

The police in this case acted upon more than speculation. Under the totality of the circumstances known to the officers at the time they entered the motel room, we conclude the police had an objectively reasonable basis for believing the minor girl was either being subjected to molestation or sexual assault or was in imminent danger of such conduct. The police officers in this case acted swiftly to protect the minor from what appeared to be an ongoing situation. Indeed, it would have been a dereliction of duty for the officers to abandon their investigation to obtain a search warrant while it was likely a child was being harmed. As it turns out, the officers' concerns regarding what was occurring in the room were well founded. Castano was caught in the act of molesting his daughter. Entry into the room was justified under the emergency aid exception and the court properly denied the motion to suppress.[9]

---

[9]     In light of this holding, we need not consider the alternative argument that the entrance into the hotel room was justified under the "community caretaker" exception to the warrant requirement. (See *People v. Ray* (1999) 21 Cal.4th 464, 471.)

13

## II

*Substantial Evidence Supports the Convictions for Forcible Lewd Acts*

Castano also contends there was insufficient evidence to support his convictions for counts 1 through 3 for committing lewd or lascivious acts on a minor by force or duress asserting he never made explicit or implicit threats.[10] Again, we disagree.

For a conviction under section 288, subdivision (b)(1), the prosecution must establish the defendant committed lewd or lascivious acts on a child under the age of 14 by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. Since Castano concedes he committed lewd acts on a child in the motel room, the issue we consider on appeal is whether there was substantial evidence to find the acts were committed under duress.

In reviewing claims of insufficient evidence in criminal cases, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a

---

10    The opening brief refers to counts 1 through 4. However, count 4 was dismissed by motion of the parties.

reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

Duress is defined as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 50, disapproved on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.) "The total circumstances, including the age of the victim, and [the] relationship to defendant are factors to be considered in appraising the existence of duress." (*People v. Pitmon*, *supra*, at p. 51.)

Other relevant factors include not only threats to harm the victim or physical control of the victim when he or she tries to resist, but also warnings to the victim that revealing the molestation will jeopardize the family. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 14, disapproved on other grounds in *People v. Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12.) "The very nature of duress is psychological coercion. A threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and

15

the defendant is her parent. We also note that such a threat also represents a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults." (*People v. Cochran*, *supra*, at p. 15)

In this case, Castano told the minor he would be in big trouble if she told anyone about the acts of molestation. On the day of the incident, Castano told the minor to lie to his girlfriend about their whereabouts. The minor testified she was afraid if she did not comply, if she attempted to leave the motel room or if she told, her family would be jeopardized because they would not have a home without her father. She also testified she felt physically ill when they were in the motel room because she knew what was going to happen.

In addition to this psychological pressure, the evidence showed Castano transported the minor by public transportation to a different city, which further isolated her from her home and family. Castano essentially imprisoned her in a motel room by barricading the doors and windows. He forced her to take a shower while he watched and then molested her and required her to perform sexual acts. The minor was scared and did not feel she could leave.

Castano relies on the case of *People v. Hecker* (1990) 219 Cal.App.3d 1238, in which we held, under the facts of that case, there was insufficient evidence to establish forcible lewd acts for defendant's molestation of his 12-year-old stepdaughter based upon evidence she "felt pressured psychologically and 'subconsciously afraid' " because she did not want to be responsible for breaking up the defendant's marriage to her mother. (*Id.* at p. 1242.) We have since criticized the language in that case as overly broad. (*People*

16

*v. Cochran*, *supra*,103 Cal.App.4th at p. 15.) We have explained, as a factual matter, when the victim is young and is molested by her father in the family home, "in all but the rarest cases duress will be present." (*Id*. at p. 16, fn. 6.)

In this case, Castano is the minor's father. The forcible lewd acts occurred not in the home, but at a motel room in a city distant from the home where the minor could not flee to safety. Additionally, unlike in *People v. Hecker*, *supra*, 219 Cal.App.3d 1238, Castano exerted not only psychological pressure on his daughter, but also physical barriers to directly or impliedly threaten her to submit to lewd acts.

Under the totality of the circumstances, we conclude there is ample and substantial evidence to support the jury's guilty verdict with respect to counts 1 through 3.

III

*There Was No Prosecutorial Misconduct Warranting Reversal*

Castano contends the prosecutor committed misconduct during closing statements resulting in prejudice. He specifically argues he would not have been convicted of counts 1 through 3, lewd acts on a child by duress if the prosecutor had not said the evidence established duress for all counts but it was "easier" to see why forcible lewd acts were charged only for the conduct in the motel room. We find no merit in this contention.

A.    *Prosecutor Comments During Closing Statement*

During the prosecutor's explanation of the difference between lewd acts on a child by duress, as charged in counts 1 through 3, and lewd acts on a child without duress, as charged in counts 5 through 10, he discussed the concept of duress. In doing so, he commented, "every time he touched her, legally speaking, was under duress." He then

17

commented, "[t]he reason this case is charged the way it is is because it's so much easier." Defense counsel objected it was improper to argue why the case was charged the way it was. The court overruled the objection.

The prosecutor continued his argument without discussing the charging decision, but stated, "[i]t's so much easier to see why on December 9, 2009, when defendant took his little girl all the way across town to a motel and barricaded her in the room and molested her, it's so much easier to see it was under duress. What's she going to do? Where is she going to go? She just traveled for an hour by walking, by train, by bus. She's in Escondido. She lives in Vista." "[T]here is a table blocking the door." " So, in addition to all those factors, the age, the relationship, the fact that she knows if she tells anyone her life is over, her life is ruined." "[I]t's so much easier to see duress when there are physical barriers. She's afraid. She can't go anywhere."

B.    *Analysis*

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*People v. Hill* (1998) 17 Cal.4th 800, 819.)

18

Although it is true prosecutors are "held to an elevated standard of conduct" (*People v. Hill*, *supra*, 17 Cal.4th at p. 819), " 'because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state' " (*Id.* at p. 820) it is also true "[t]he prosecution is given wide latitude during closing argument to vigorously argue its case and to comment fairly on the evidence, including by drawing reasonable inferences from it." (*People v. Lee* (2011) 51 Cal.4th 620, 647.)

We conclude there was no misconduct in this case. The prosecutor made a passing comment about the "reason this case is charged the way it is," but he did not argue personal knowledge or give an opinion of defendant's guilt based on evidence outside the record. Rather, he commented on the strength of the evidence. While the prosecutor argued all of the acts of molestation probably occurred under some form of duress (which could be one reasonable interpretation of the evidence), he simply argued why it was "easier" to see why the evidence of what occurred in the motel room, where Castano erected physical barriers to prevent the minor from leaving, established the element of duress necessary for counts 1 through 3. This was an accurate statement based upon the evidence and legitimate inferences that could be drawn from the evidence. There was no deceptive or reprehensible attempt to persuade either the court or the jury.[11]

---

[11]  Because we reject Castano's argument that the prosecutor improperly referenced a matter outside the record, we do not reach his argument the statement violated his rights under the Sixth Amendment confrontation clause.

19

Even if the statement could be viewed as misconduct, we would conclude reversal of the judgment is not required because any such error was harmless. When a claim of prosecutorial misconduct focuses on the prosecutor's comments before the jury, " 'the question is whether there is a *reasonable likelihood* that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1202-1203, italics added, quoting *People v. Berryman* (1993) 6 Cal.4th 1048, 1072, overruled on another point in *People v. Hill*, *supra*, 17 Cal.4th at pp. 822-823; see also *People v. Cummings* (1993) 4 Cal.4th 1233, 1302 ["If there is a reasonable likelihood that the jury would understand the prosecutor's statements as an assertion that defense counsel sought to deceive the jury, misconduct would be established."].) When the federal constitutional right to a fair trial is not violated, we apply the California standard for harmless error, that is, whether, based on the totality of the evidence, it is reasonably probable the defendant would have obtained a more favorable result absent the claimed prosecutorial misconduct. (*People v. Castillo* (2008) 168 Cal.App.4th 364, 386.)

This is not a close case. Castano was caught molesting his daughter while barricaded in a motel room in a city distant from their home. The minor testified she was scared and did not feel free to leave. Given the strong evidence of the Castano's guilt, we conclude he failed to meet his burden of demonstrating a reasonable probability he would have obtained a more favorable result absent the passing comment of the prosecutor regarding how the information was charged.

20

Additionally, the court instructed the jury with respect to reasonable doubt: "[t]he fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial." The court also instructed the jury it must use only the evidence presented during trial, not statements made by the attorneys during closing argument. We presume the jurors followed these instructions. "We presume that jurors comprehend and accept the court's directions. [Citation.] We can, of course, do nothing else. The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions." (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

AARON, J.

21